**STATE of Tennessee, Appellee,**

v.

**Billy Joe HARRIS, Appellant.**

Supreme Court of Tennessee,
at Jackson.

Dec. 7, 1992.

Mark W. Fowler, Union City, for defendant-appellant.

Charles W. Burson, Atty. Gen. & Reporter, Joel W. Perry, Asst. Atty. Gen., Nashville, for appellee.

## OPINION

DROWOTA, Justice.

The sole issue presented by this appeal is whether Defendant Billy Joe Harris's 20-year sentence for aggravated sexual battery violates the Eighth Amendment of the United States Constitution or Article I, Section 16, of the Tennessee Constitution. We granted Defendant's application to appeal in order to address whether his sentence is unconstitutionally disproportionate to his crime. Finding the sentence violates neither the State nor Federal Constitution, we affirm.

The eight-year-old victim in this case attended a birthday party for a friend at Defendant's home. After the party, the victim spent the night, sleeping with two other girls on a sofa-bed. The next morning she awoke to find Defendant fondling her chest under her nightgown and touching her in the genital area over her shorts. The victim reported the crime to her mother, the police were notified, and Defendant was arrested.

In April 1989, Defendant was convicted of Aggravated Sexual Battery under T.C.A. § 39–2–606 (Supp.1988)[1]. Defendant was sentenced as a Range II Especially Aggravated Offender, T.C.A. § 40–35–107(5)(Supp.1988), to 20 years incarceration, the minimum sentence then mandated for commission of an aggravated sexual battery upon a child less than 13 years of age. Defendant's conviction and sentence were affirmed by the Court of Criminal Appeals.[2]

■ At the outset we note that because reviewing courts should grant substantial deference to the broad authority legislatures possess in determining punishments for particular crimes, "[o]utside the context of capital punishment, *successful* challenges to the proportionality of particular sentences [will be] exceedingly rare." *See Solem v. Helm,* 463 U.S. 277, 289–90, 103 S.Ct. 3001, 3009, 77 L.Ed.2d 637, 649 (1983) (emphasis in original) (quoting *Rummel v. Estelle,* 445 U.S. 263, 272, 100 S.Ct. 1133, 1138, 63 L.Ed.2d 382, 390 (1980)). Further, we announce no new constitutional rule today, but undertake only to clarify the reach of Article I, Section 16 of the Tennessee Constitution. Review of Defendant's sentence was granted only because the matter was properly raised before the intermediate court and that court's opinion did not address this particular contention.

■ Pursuant to the Eighth Amendment to the United States Constitution, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." While this provision has historically been interpreted to require "that punishment for crime should be graduated and proportioned to [the] offense," *Weems v. United States,* 217 U.S. 349, 367, 30 S.Ct. 544, 549, 54 L.Ed. 793, 798 (1910), the precise contours of the federal proportionality guarantee are unclear. *See Harmelin v. Michigan,* — U.S. —, 111 S.Ct. 2680, 2703, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring in part). Nevertheless, recent federal jurisprudence convinces us that Defendant's sentence passes federal constitutional muster. *C.f., e.g., id.* (sentence of life without parole for possession of 650 grams of cocaine); *McQueary v. Blodgett,* 924 F.2d 829 (9th Cir.1991) (23-year sentence for first degree assault); *United States v. Williams,* 923 F.2d 76 (8th Cir.) (life sentence for being a felon in possession of a firearm), *cert. denied,* — U.S. —, 112 S.Ct. 131, 116 L.Ed.2d 98 (1991).

Although the language of Article I, Section 16, of the Tennessee Constitution is virtually identical to that of the Eighth

---

1. Defendant was tried and sentenced under former criminal code provisions which were revised and reorganized in 1989. Sexual offenses are now codified at T.C.A. §§ 39–13–501 to 522 (1991). Sentencing provisions are codified at T.C.A. §§ 40–35–101 to 504 (1990 & Supp.1991). While Mr. Harris may have received a shorter sentence under these new laws, this fact does not render the previous sentence cruel or unusual for purposes of the Eighth Amendment. *See United States v. Holley,* 818 F.2d 351, 354 (5th Cir.1987).

2. On August 22, 1990, Chief Justice Reid, then on the Court of Criminal Appeals, authored the opinion of that Court, thus he has not participated in the decision of this case.

Amendment, this does not foreclose a more expansive interpretation of the Tennessee constitutional provision. *See State v. Black,* 815 S.W.2d 166, 188 (Tenn.1991).[3] We therefore examine the scope of the Tennessee provision before turning to Defendant's State constitutional challenge.

■ We hold that the proper means by which to evaluate a defendant's proportionality challenge under the Tennessee Constitution is that set forth by Justice Kennedy in *Harmelin,* — U.S. at ——–——, 111 S.Ct. at 2702–09, 115 L.Ed.2d at 866–74 (Kennedy, J., concurring in part). Under this methodology, the sentence imposed is initially compared with the crime committed. Unless this threshold comparison leads to an inference of gross disproportionality, the inquiry ends—the sentence is constitutional. In those rare cases where this inference does arise, the analysis proceeds by comparing (1) the sentences imposed on other criminals in the same jurisdiction, and (2) the sentences imposed for commission of the same crime in other jurisdictions.

■ After examining Defendant's 20–year sentence in light of the gravity of his offense, we hold that no inference of gross disproportionality arises. Defendant's unlawful touching of the small child was a deliberate attempt to gratify his perverted desires which, the trial court specifically found, caused the victim mental suffering. Indeed, the traumatic memory of this battery may remain with the victim for life, perhaps to fester and manifest itself in as yet unknown manners. A 20–year sentence is not an unconstitutional punishment for this crime.

There being no inference of gross disproportionality, we need not proceed to intra- and inter-jurisdictional analyses.

Defendant's 20–year sentence is not grossly disproportionate to his crime of aggravated sexual battery on an eight-year-old victim so as to constitute cruel and unusual punishment under the Eighth Amendment of the United States Constitution or Article I, Section 16, of the Tennessee Constitution. Accordingly, the judgment of the Court of Criminal Appeals is affirmed.

O'BRIEN and ANDERSON, JJ., concur.

DAUGHTREY, J., dissents.

REID, C.J., not participating.

DAUGHTREY, Justice, dissenting.

There are several propositions set out in the majority opinion with which I agree. There can be no legitimate question, for example, that "the fixing of prison terms for specific crimes involves a substantive penological judgment that, as a general matter, is properly within the province of legislatures, not courts." *Harmelin v. Michigan,* 501 U.S. ——, ——, 111 S.Ct. 2680, 2703, 115 L.Ed.2d 836 (1991) (quoting *Rummel v. Estelle,* 445 U.S. 263, 275–276, 100 S.Ct. 1133, 1139–1140, 63 L.Ed.2d 382 (1980)). It is for this reason that when faced with an allegation that a particular sentence amounts to cruel and unusual punishment, "[r]eviewing courts ... should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes...." *Solem v. Helm,* 463 U.S. 277, 290, 103 S.Ct. 3001, 3009, 77 L.Ed.2d 637 (1983). At the same time, there can also be no question that reviewing courts, in Tennessee at least, must on rare occasions take action with regard to penalty statutes that do not comport with constitutional guarantees. As noted in an early case:

> This court has never declared void an act of the Legislature under the sixteenth section of the [Tennessee] Bill of Rights, forbidding excessive bail, excessive fines,

---

**3.** Recently, in the context of capital punishment, we stated that in order to determine whether a legislatively approved punishment is cruel and unusual under the Tennessee Constitution three inquiries are required: "First, does the punishment for the crime conform with contemporary standards of decency? Second, is the punishment grossly disproportionate to the offense? Third, does the punishment go beyond what is necessary to accomplish any legitimate penological objective?" *Black,* 815 S.W.2d at 189 (quoting *State v. Ramseur,* 106 N.J. 123, 524 A.2d 188, 210 (1987)). The second inquiry, gross disproportionality, concerns us here.

and cruel and unusual punishments, in any reported case known to us.... However, we think that the [legal] profession generally understands, and the clear weight of modern authority is, that the courts have such power under Section 16 of the Bill of Rights, and in a proper case presenting the question, it would be their undoubted duty to do so. *Brinkley v. State*, 125 Tenn. 371, 382–83, 143 S.W. 1120, 1122 (1911). *Accord State v. Black*, 815 S.W.2d 166, 188–189 (Tenn. 1991).

In addition, I applaud the majority's decision to subject the sentence in this case to scrutiny under the state as well as the federal constitution, and in so doing, to flesh out the standards to be applied under state law. I differ with the majority only as to the test to be applied under Article I, Section 16 of the Tennessee Constitution and as to the result in this case.

### 1. Determination of Gross Disproportionality Under Article I, Section 16

Judicial recognition of Tennessee's constitutional protection against cruel and unusual punishment in *Brinkley* predates extension of the Eighth Amendment's cruel and unusual punishment clause to the states [1]. Unfortunately, when the *Brinkley* court concluded that the penalty statute in question there did not "fall within the prohibition ... of the Constitution," it did so without identifying a rationale for its conclusion. *Brinkley v. State*, 125 Tenn. at 383, 143 S.W. at 1122.

In the 80–odd years since *Brinkley*, Tennessee decisions have tended to follow suit, either referencing but omitting discussion of the state constitutional provision, *see, e.g., Pearson v. State*, 521 S.W.2d 225, 229 (Tenn.1975), or assuming without analysis that the state constitutional prohibition against cruel and unusual punishment "places no greater restriction on the punishments that may be imposed by this state than does the federal constitution." *Cozzolino v. State*, 584 S.W.2d 765, 767 (Tenn.

1979); *accord State v. McKee*, 803 S.W.2d 705, 706 (Tenn.Crim.App.1990).

Just last year, however, we recognized that "although the Eighth Amendment to the Federal Constitution and Article I, § 16, are textually parallel, this does not foreclose an interpretation of the language of Article I, § 16, more expansive than that of the similar federal provision." *State v. Black*, 815 S.W.2d at 188. We further noted in *Black* that "[t]he very generality of the terms 'cruel and unusual' indicates that, like the framers of the Federal Constitution, the authors of Tennessee's fundamental law delegated the task of defining these terms to the courts," while at the same time recognizing that "[t]he exact standards to be used to determine whether a legislatively approved punishment is cruel and unusual under the Tennessee Constitution have never been set forth by the courts of this state." *Id.* at 188–189.

In *Black*, we dealt specifically with the constitutional validity of Tennessee's capital punishment statute, with a majority of the Court in agreement that the death penalty is not, in every instance, disproportionate to the offense of first-degree murder. In this case, we have the opportunity to develop standards applicable to the determination of what constitutes cruel and unusual punishment in a non-capital case. In an era when federal law on this subject appears to be unsettled, *compare Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980) (*held:* life sentence for recidivist convicted of non-violent offenses does not violate Eighth Amendment), *with Solem v. Helm*, 463 U.S. 277, 305, 103 S.Ct. 3001, 3017, 77 L.Ed.2d 637 (1983) (*held:* life sentence without possibility of parole for recidivist with record of relatively minor offenses does violate Eighth Amendment), and *with Harmelin v. Michigan*, 501 U.S. ——, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (*held:* life sentence without possibility of parole for possession of large quantity of cocaine does not violate Eighth Amendment), development of the Tennessee Constitution's provisions seems particularly appropriate.

---

**1.** *See Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962).

Where I part company with the majority's analysis is in its adoption of the test for determining constitutional validity put forward in Justice Kennedy's opinion in *Harmelin*. In the first place, the analysis constructed by Justice Kennedy to determine whether a given punishment is cruel and unusual focuses almost exclusively on a threshold determination of "gross disproportionality." This test conflicts with the one we adopted in *Black*, in which we concluded that under state constitutional analysis, "three inquiries are required":

> First, does the punishment for the crime conform with contemporary standards of decency? Second, is the punishment grossly disproportionate to the offense? Third, does the punishment go beyond what is necessary to accomplish any legitimate penological objective[?]

*State v. Black*, 815 S.W.2d at 189 (quoting *State v. Ramseur*, 106 N.J. 123, 169, 524 A.2d 188, 210 (1987)).

Moreover, because of the split of opinion in *Harmelin*, the decision has already, just a year after its release, garnered substantial judicial disparagement. The ruling under attack in *Harmelin* was the United States Supreme Court's recognition only eight years earlier that "[t]he principle that a punishment should be proportionate to the crime is deeply rooted ... in common-law jurisprudence," tracing back to the Magna Carta, and the Court's holding, based on that principle of proportionality, that the Eighth Amendment "includ[es] the right to be free from excessive punishments." *Solem v. Helm*, 463 U.S. at 284, 286, 103 S.Ct. at 3006, 3007.

In *Solem v. Helm*, the United States Supreme Court had suggested a three-part inquiry for deciding whether a given penalty is sufficiently "graduated and proportioned to [the] offense" in question to pass constitutional muster. *Id.* at 287, 103 S.Ct. at 3008 (quoting *Weems v. United States*, 217 U.S. 349, 367, 30 S.Ct. 544, 549, 54 L.Ed. 793 (1910)). "First," the *Solem* court said, "[in determining excessiveness] we look to the gravity of the offense and the harshness of the penalty.... Second, it may be helpful to compare the sentences imposed on other criminals in the same jurisdiction.... Third, courts may find it useful to compare the sentences imposed for commission of the same crime in other jurisdictions." *Id.* at 290–292, 103 S.Ct. at 3009–3011. Under *Solem*, if application of these "objective criteria" leads to the conclusion that the sentence is "significantly disproportionate to [the] crime," that sentence is "prohibited by the Eighth Amendment." *Id.* at 303, 103 S.Ct. at 3016–3017.

When, last year, the United States Supreme Court was asked to review the Michigan statute at issue in *Harmelin*, only four justices were willing to continue adherence to *Solem v. Helm*.[2] Justice Scalia, writing for himself and the Chief Justice, argued that "the Eighth Amendment contains no proportionality guarantee."[3] The remaining three justices, Kennedy, O'Connor, and Souter, occupied what can only be described as a middle ground. They formed a majority to deliver as the "opinion of the court" a five-paragraph section of Justice Scalia's multi-part opinion. That portion of Scalia's opinion does little more than hold that the Michigan statute mandating a life sentence without possibility of parole for first offense cocaine possession does not violate the Eighth Amendment.[4]

---

2. Justice White, who had dissented in *Solem*, was joined in this view by Justices Blackmun, Marshall, and Stevens. Among them, they issued three separate dissenting opinions.

3. *Harmelin*, 501 U.S. at ——, 111 S.Ct. at 2686 (Scalia, J., joined in Parts I, II, III, and IV of the judgment of the court only by Rehnquist, C.J.).

4. Substantively, this portion of the opinion responds to the contention that the mandatory life sentence required by the Michigan statutes permits no mitigations and thus does not permit "individualization" in sentencing. The five justices who joined in this part of Scalia's opinion concluded that "individualized sentencing," required in capital cases, is not required in noncapital cases. This point of discussion, the only one that drew as many as five votes, is largely insignificant to the case and leads to the conclusion that the true "judgment of the court" is contained in the opinion's final pronouncement—that the judgment of the Michigan Court of Appeals upholding Harmelin's life sentence

Thus, the proportionality analysis of Justice Kennedy, writing only for himself and two others in *Harmelin*, does not represent a majority holding in that case. Indeed, of the seven judges who continue to adhere to the proposition that the eighth Amendment includes a guarantee of proportionality applicable in non-capital cases, a majority of them also adheres to the tripartite analysis utilized in *Solem v. Helm*. This ungainly split in *Harmelin* has caused at least one state high court to question whether that case had any real impact on the continued viability of *Solem. State v. Bartlett*, 171 Ariz. 302, 830 P.2d 823 (1992) (*held: Solem* survives *Harmelin;* defendant's 40–year sentence under Arizona statute for consensual sexual encounters with two teenagers, analyzed under *Solem*, constitutes cruel and unusual punishment under federal law). Because Justice Kennedy's opinion represents the view of only three members of the Court, it should be regarded as being even less persuasive than a United States Supreme Court opinion would ordinarily be on the question of what standard we should adopt under our state constitution.

What Justice Kennedy champions in *Harmelin* is a narrowing of the principle of proportionality, to be achieved by giving controlling weight to the first of the *Solem* factors and by raising the standard from one of "significant disproportionality" to that of "gross disproportionality." Hence, in his view the "intra- and inter-jurisdiction analyses" that form the second and third prongs of the *Solem* inquiry would be "appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Harmelin*, 501 U.S. at ——, 111 S.Ct. at 2707. Justice Kennedy concludes that "[t]he proper role for comparative analysis of sentences . . . is [merely] to validate an initial judgment that a sentence is grossly disproportionate to a crime." *Id.*

It is difficult to quarrel with the proposition that there must be some significant indication of disproportionality between a

sentence and the offense for which it is imposed before a court is called upon to undertake the arduous task of making a comparative analysis of that sentence on either an intra-jurisdictional or an inter-jurisdictional basis, or both. But it is also difficult to understand how a court can determine that a given sentence is "grossly disproportionate" without reference to an overall sentencing scheme, or, viewed from another perspective, why a court would need to make a comparative analysis if it had already concluded on some other basis that the sentence was, indeed, "grossly disproportionate."

Of more than passing interest on the question of the appropriate standard for assessing disproportionality is the recent decision of the Michigan Supreme Court in *People v. Bullock*, 440 Mich. 15, 485 N.W.2d 866 (1992), invalidating the mandatory life sentence at issue in *Harmelin* under the Michigan state constitution's "cruel or unusual punishment" clause. In *Bullock*, a majority of the Michigan court rejected Justice Kennedy's narrowed proportionality analysis in *Harmelin* and adhered instead to a formulation first announced in *People v. Lorentzen*, 387 Mich. 167, 194 N.W.2d 827 (1972). In *Lorentzen*, the Michigan Supreme Court had held that imposition of an "excessive" sentence would violate the Michigan state constitution, as well as the Eighth Amendment. To test for excessiveness, the *Lorentzen* court set up a three-part review that presaged almost exactly the *Solem* tripartite analysis. 387 Mich. at 176–179, 194 N.W.2d at 829–833.

Applying what it referred to as the *Lorentzen–Solem* analysis to the statute at issue, the Michigan court in *Bullock* held that a mandated penalty of life without possibility of parole for possession of 650 grams or more of cocaine is unconstitutional under Michigan law, even though the same statute was held constitutional under the Eighth Amendment in *Harmelin*.

I have no difficulty with the proposition that a given sentence should be held to be "grossly disproportionate" before it can be

should be affirmed. *See, Harmelin*, 501 U.S. at ——, 111 S.Ct. at 2702.

invalidated under the state or federal constitutions. Nor do I disagree with the proposition that, as a threshold matter, the sentence should appear to be unduly harsh or excessive in order to trigger further inquiry. But I do not agree with the majority's opinion in this case that a penalty must appear to be "grossly disproportionate" on its face before it can be subjected to comparative analysis and declared unconstitutional. Because the majority gives little guidance on how we are to know "gross disproportionality" when we see it, I think the majority's holding puts the legal cart before the horse. If I were writing for the majority, I would advocate the adoption of a tripartite analysis like that utilized in *Solem* and *Bullock.*

### 2. Application of the Tripartite Standard to the Facts in This Case

A. Gravity of the Offense and Severity of the Sentence.

In analyzing a penalty to determine whether it is excessive, most courts look first to the nature of the offense involved, in order to determine its relative gravity. In *Solem,* for example, the United States Supreme Court set out various factors to be considered in weighing the gravity of an offense relative to the severity of the penalty:

Comparisons can be made in light of the harm caused or threatened to the victim or society; and the culpability of the offender.... [A]s the criminal laws make clear, nonviolent crimes are less serious than crimes marked by violence or the threat of violence.... The absolute magnitude of the crime may be relevant.... Few would dispute that a lesser included offense should not be punished more severely than the greater offense ... [,] that attempts are less serious than completed crimes ... [and that] an accessory after the fact should not be subject to a higher penalty than the principal.

*Solem v. Helm,* 463 U.S. at 292–293, 103 S.Ct. at 3011 (citations omitted).

While all these factors are important to some degree, not all of them will be relevant in a particular case. There can be no doubt, however, that in the absence of a recidivist provision, a very long sentence of incarceration for what is essentially a nonviolent crime will subject the penalty provision to scrutiny. As the Michigan Supreme Court noted in *Lorentzen:*

A compulsory prison sentence of 20 years for a non-violent crime imposed without consideration for defendant's individual personality and history is so excessive that it "shocks the conscience."

*People v. Lorentzen,* 387 Mich. at 181, 194 N.W.2d at 834.

The offense in *Lorentzen* was sale of marijuana, which is qualitatively different from the offense of sexual battery involved here. But it does not trivialize the offense of sexual battery to hold that the penalty upon conviction cannot be disproportionate to the actual misconduct. In *State v. Evans,* 73 Idaho 50, 54, 245 P.2d 788, 789 (1952), for example, the Idaho Supreme Court struck down a life sentence imposed on the defendant for conviction of "committing lewd and lascivious acts upon and with the body of a female child under the age of 16 years." The Idaho court said:

[I]t is now generally recognized that imprisonment for such a length of time as to be out of all proportion to the gravity of the offense committed, and such as to shock the conscience of reasonable men, is cruel and unusual within the meaning of the [state] constitution.[5]

In other jurisdictions, statutory penalties have been found to constitute cruel and unusual punishment under similar tests. In *State v. Des Marets,* for example, the New Jersey Supreme Court framed the inquiry in the following manner:

In considering [the defendant's claim that his sentence amounts to "cruel and unusual punishment" under the New Jersey Constitution], we inquire whether the

---

5. 73 Idaho at 58, 245 P.2d at 792 (citations to cases in nine states and the United States Supreme Court omitted).

nature of the criticized punishment shocks the general conscience and violates principles of fundamental fairness; whether comparison shows the punishment to be grossly disproportionate to the offense; and whether the punishment goes beyond what is necessary to accomplish any legitimate penal aim. 92 N.J. 62, 455 A.2d 1074, 1084 (1983).

Similarly, the Massachusetts Supreme Judicial Court "has recognized that it is possible that imprisonment for a long term of years might be so disproportionate to the offense as to constitute cruel and unusual punishment" under state law. *Cepulonis v. Commonwealth*, 384 Mass. 495, 427 N.E.2d 17, 19 (1981). That Court noted further that "[t]o reach the level of cruel and unusual, the punishment must be so disproportionate to the crime that it 'shocks the conscience and offends fundamental notions of human dignity'." *Id.*, 427 N.E.2d at 20 (quoting *In re Lynch*, 8 Cal.3d 410, 424, 105 Cal.Rptr. 217, 226, 503 P.2d 921, 930 (1972)). *Accord Workman v. Commonwealth*, 429 S.W.2d 374, 377, 378 (Ky. 1968) (reviewing court must determine whether the sentence is "so disproportionate to the offense committed as to shock the moral sense of the community" or "violate the principles of fundamental fairness"); *State v. Guajardo*, 428 So.2d 468, 472 (La.1983) (reviewing court must determine whether the penalty is "so severe as to be degrading to human dignity, whether it imposes arbitrary infliction of punishment, and whether it shocks contemporary notions of decency"); *State v. Davis*, 108 Ariz. 335, 337, 498 P.2d 202, 204 (1972) (reviewing court must determine whether sentence is so disproportionate as to shock "the conscience of society").

In addition, courts have required, as Justice White noted in his separate opinion in *Harmelin*, that "[t]o be constitutionally proportionate, punishment must be tailored to a defendant's personal responsibility and moral guilt." 501 U.S. at ——, 111 S.Ct. at 2716. *See, e.g., People v. Bullock*, 440 Mich. at 39, 485 N.W.2d at 876 (quoting *Harmelin*); *People v. Dillon*, 34 Cal.3d 441, 480, 194 Cal.Rptr. 390, 414, 668 P.2d 697, 721 (1983) ("a punishment which is not disproportionate in the abstract is nevertheless constitutionally impermissible if it is disproportionate to the defendant's individual culpability").

Finally, in applying state constitutional restrictions, the courts in some jurisdictions have given consideration to "the penological purposes of the prescribed punishment." *In re Foss*, 10 Cal.3d 910, 919, 112 Cal.Rptr. 649, 654, 519 P.2d 1073, 1078 (1974) (en banc). For example, in addition to its tripartite analysis in cases involving a claim of disproportionality, the Massachusetts Supreme Judicial Court imposes a further test:

> The standard of review in considering less than a capital sentence is "whether the statute bears a reasonable relation to a permissible legislative objective." This court has identified the interests served by punishment. These are (1) deterrence, (2) isolation and incapacitation, (3) retribution and moral reinforcement, and (4) reformation.

*Cepulonis v. Commonwealth*, 427 N.E.2d at 21 (citations omitted). *Accord State v. Des Marets*, 92 N.J. at 82, 455 A.2d at 1084 (reviewing court must determine "whether the punishment goes beyond what is necessary to accomplish any legitimate penal aim").

There can be little doubt that the eight-year-old victim in this case was traumatized to some degree when the defendant briefly rubbed her chest under her clothes and her genital area over her clothes, although not all would find it as theoretically damaging as does the majority here. There can also be no doubt that such activity should be proscribed by law. The question is whether the mandatory minimum sentence of 20 years imprisonment is an excessive penalty for such behavior and therefore cruel and unusual under Article I, Section 16 of the Tennessee Constitution.

Although labelled as "aggravated sexual battery" for purposes of Tennessee's current criminal code, the misconduct in this case has historically been identified as "child molesting" or "child fondling" and

punished either as a misdemeanor or a lesser-grade felony.

Prior to 1961, the offense of assault and battery on a young female under circumstances not amounting to an attempt to commit rape was treated as an attempt to commit a felony, and was punishable by one to five years incarceration, or as the lesser included offense of assault and battery, punishable as a misdemeanor by imprisonment of less than a year accompanied by a fine. *See, e.g., Brown v. State,* 65 Tenn. 422 (1873); *State ex rel. Hull v. Rimmer,* 129 Tenn. 383, 386, 164 S.W. 1148 (1914). In 1961, the legislature amended then T.C.A. § 39–606, proscribing assault with intent to carnally know a female under the age of 12, by adding as an offense assault with intent to sexually molest or fondle a child under the age of 12. Acts of 1961, ch. 90, § 1. The newly defined offense continued to carry a sentence of one to five years for first-time offenders. *Id.* The fondling statute remained in effect until 1978, when it was repealed, effective May 11, 1978. Acts of 1978, ch. 937, § 10. On that date, the "Sexual Offenses Law of 1977" took effect, and sexual contact with a child under 13 years of age became "criminal sexual conduct in the second decree," punishable by two to 15 years imprisonment. T.C.A. § 39–3704 (Supp.1978). This provision was to remain on the books for only a year.

In 1979, yet another new sex offense statute was adopted, this one called "The Sexual Offenses Law of 1979," T.C.A. § 39–3701 (Supp.1979). The 1979 act created the offense of "sexual battery," defined as "unlawful sexual contact with another person." T.C.A. § 39–3704 (Supp.1979). In turn, "sexual contact" was defined as "the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area ..., if ... reasonably ... construed as being for the purpose of sexual arousal or gratification." T.C.A. § 39–3702 (Supp.1979). If the victim was less than 13 years old, the offense was elevated to aggravated sexual battery. The initial penalty provisions of the 1979 law were ambiguous, but they were clarified in the next session of the legislature. Acts of 1980 (Adj. S), ch. 463, § 3, and ch. 788, § 3. If the victim was 13 years old or older, the offense was punishable by not more than five years in the penitentiary, essentially the same penalty as provided under the prior codes. T.C.A. § 39–3706 (1980 Supp.). But, if the victim was younger than 13, the offense became "aggravated sexual battery," punishable by a minimum of five years and a maximum of 35 years incarceration. T.C.A. § 39–3704 (1980 Supp.).

Although this escalation of the gravity of the offense, at least as to young victims, was substantial, a first offender convicted of fondling an eight-year-old would have faced a Range I sentence of five to 20 years, under the new sentence calculation provisions enacted in 1982. *See* T.C.A. § 40–35–109 (1982). A Range II sentence, with a minimum of 20 years and a maximum of 35 years, was reserved for "especially aggravated" offenses and for "persistent" offenders only. *See* T.C.A. § 40–35–109(c) (1982).

Three years later, as part of a legislative package aimed at preventing child sexual abuse, the General Assembly amended what was then T.C.A. § 40–35–107 to mandate Range II sentences for offenses "involving the unlawful sexual abuse, molestation, fondling or carnal knowledge of a child under the age of thirteen." Acts of 1985, ch. 478, §§ 3, 29, codified as T.C.A. § 40–35–107(5). Thus, with reference to T.C.A. § 39–2–606, the "aggravated sexual battery" statute under which defendant Harris was convicted, the mandatory minimum sentence became 20 years imprisonment, regardless of the fact that there were no aggravating or extenuating factors involved *other than* the age of the child. Of course, this factor had already been used to elevate what would otherwise have been "sexual battery" into "aggravated sexual battery." Hence, as punishment for the relatively innocuous act of touching the buttocks of a 12–year–old child over clothing, if committed for the purpose of sexual gratification, an accused became subject to a mandatory prison sentence of

at least 20 years. In a matter of less than a decade, the penalty for conviction of an offense punishable by a minimum sentence of a year (or less) had been increased five-fold and then 20–fold.

Still, it might be possible to defer to legislative prerogative and bow to the General Assembly's wisdom in providing such a severe sentence for child fondling, were it not for the fact that this obviously harsh penalty turned out to be short-lived. For when the new Criminal Sentencing Reform Act of 1989 was adopted, effective November 1 of that year, the penalty for a Range I offender found guilty of aggravated sexual battery was reduced to a minimum of eight and maximum of 12 years. T.C.A. §§ 39–13–504 and 40–35–112(a)(2). Only a "career offender" or a "persistent offender" under T.C.A. §§ 40–35–107—108 is now subject to a minimum sentence of as much as 20 years.

It seems apparent that the 20–year minimum sentence imposed on this defendant must be considered "unusual," if for no other reason than its limited temporal applicability—it was mandated by statute only from July 3, 1985, until November 1, 1989, a period of just over four years. Like Billy Joe Harris in this case, similarly situated convicts currently serving mandatory prison sentences of 20 years and over for fondling a child suffer not from the result of principled penology, but from the sheer fortuity of timing. Had they committed the same offense only a matter of months earlier or later than they did, the minimum penalty would have been a fraction of the sentence they actually received.

Moreover, there is little doubt that the 20–year mandatory sentence at issue here would be found invalid under most, if not all, of the state constitutional standards discussed above. The facts of this case demonstrate that, as committed, the offense was nonviolent and did not involve even a threat of violence. As far as the record shows, it was an isolated event, committed by an individual who otherwise presents no threat to society. The offense was committed against a small child and is, therefore, appropriately subject to an enhanced penalty. But the mandatory imposition of a 20–year sentence robs the sentencing judge of the ability to tailor an appropriate penalty for an individual offender, within a reasonable statutory range of punishment.

To quote the New Jersey Supreme Court in *Des Marets*, the sentence imposed here both "shocks the conscience" and "violates principles of fundamental fairness." To impose a 20–year sentence to such an offense also "goes beyond what is necessary to accomplish a legitimate penal aim." This last point can best be seen by viewing the penalty in the abstract. As one member of the Idaho Supreme Court observed in *State v. Evans:*

> In other words, a boy 18 years of age, or even less, could ... be sent to the penitentiary for life for engaging in a "necking party" with a girl 15 years, 11 months and 29 days old. There is no statute anywhere in the United States, or anywhere else, that has been called to our attention, that contains such a gross injustice.

*State v. Evans,* 73 Idaho at 62, 245 P.2d at 795 (Keeton, J., dissenting).[6]

As further proof of "cruelty," a brief comparison of the defendant's sentence with sentences imposed for other offenses in Tennessee and on like offenders in other jurisdictions is convincing proof that the sentence in this case is unconstitutional.

**B. Intrajurisdictional Comparison.**

In comparing the sentence imposed on Billy Joe Harris with other Tennessee penalty provisions, a convenient starting point is examination of the punishment provided

---

**6.** The *Evans* court held unanimously that a mandatory life sentence, as provided by the Idaho statute for "lewd and lascivious behavior" with a child under 16 was unconstitutionally disproportionate. The court split, however, on the question of the appropriate remedy. The majority held that the statute should be interpreted to give the trial judge the discretion to set the sentence, up to life in the penitentiary. 73 Idaho at 59, 245 P.2d at 793–794. Two members of the court dissented, on the grounds that a life sentence under any circumstances would be unconstitutional.

for commission of the very same offense, but under slightly different circumstances. If, for example, Harris's victim had been 13 years old rather than eight, the defendant's conduct would have constituted sexual battery, which carried a minimum sentence under then T.C.A. § 39–2–607(a) of as little as one day, since the penalty specified for that offense was "not more than five (5) years in the penitentiary." Had he used force against this hypothetical 13–year–old victim, or had he been armed with a weapon at the time of the offense or caused her personal injury, his mandatory minimum sentence would have been only five years imprisonment as a first offender. *See* then T.C.A. § 39–2–606(b). Indeed, if the eight-year-old had resisted his fondling, thus provoking him to the point of violence, and he had killed the child, he would have been subject to a minimum sentence of only 10 years for second-degree murder, exactly half the minimum penalty to which he was exposed for mere fondling. *See* T.C.A. § 39–2–212 (1982).

As the defendant points out in his brief, under Tennessee law there were only five offenses that carried a stiffer mandatory minimum sentence than fondling a young child at the time of his conviction in this case: first-degree murder (life or death sentence, under T.C.A. § 39–2–202); inmate rebellion with intent to kill or escape (life sentence, T.C.A. § 39–5–712); causing a death by obstructing a train (life sentence, T.C.A. § 39–6–204); aggravated rape of a child under 13 (40 years to life, T.C.A. § 39–2–603(b)); and burglary by use of explosives (25 to 40 years, T.C.A. § 39–3–702). In addition, there were only three offenses with a mandatory minimum sentence equal to the 20–year sentence that Harris received: aggravated kidnapping (20 years to life, T.C.A. § 39–2–301); aggravated rape (20 years to life, T.C.A. § 39–2–603(b)); and bank robbery (20 to 40 years, T.C.A. § 39–2–501). All eight of these felonies involve either serious bodily injury or loss of life, or the greatly enhanced risk thereof.

Moreover, under the Sentencing Reform Act of 1989, the most serious class of offenses, Class A felonies, are punishable by a mandatory minimum sentence of 15 years. Limited in number, they include attempted first-degree murder, conspiracy to commit first-degree murder, second degree murder, aggravated kidnapping, especially aggravated robbery, aggravated rape, aggravated arson, and the sale or possession of large quantities of controlled substances. *See* T.C.A. §§ 40–35–110, Sentencing Commission Comments, and 40–35–111(b)(1). As noted above, the new criminal code makes the offense for which Harris was convicted a Class B felony; for a first offender, the sentencing range is eight to 12 years imprisonment.

As defense counsel phrases it, the sentence imposed on Billy Joe Harris "is out of place in the sentencing matrix, at least under the facts of this case, if not generally." Although there is no question that the legislature may validly enact a statute that penalizes a defendant more severely for victimizing a small child, or one that provides a harsh sentence in order to deter sexual abuse of children, the sentence cannot be so excessive in relation to the offense that it is unduly oppressive or unjust. In relation to Tennessee's overall penological scheme, the sentence imposed for the fondling incident in this case appears to be not only disproportionate, but "grossly disproportionate," and thus unconstitutional.

### C. Interjurisdictional Comparison.

It is important to note, first, that no other jurisdiction punishes child molestation as harshly as does Tennessee. Research indicates that most states provide a minimum sentence of one year or less for sexual contact with a child; maximum sentences commonly range from five years to 10 years, with perhaps a dozen states topping out at 15 to 20 years as a maximum. *See* Appendix A. Two states apparently permit a maximum sentence of as much as 30 years,[7] but this figure is well below the possible maximum of 35 years that was imposable under T.C.A. §§ 39–2–606 and

7. *See* R.I.Gen Laws § 11–37–8.3 and S.C.Code Ann. § 16–15–140.

40–35–107; moreover, the minimum in these two states is significantly lower than the 20–year minimum required in Tennessee at the time of this offense.[8]

There is only one reasonable conclusion that can be drawn from a comparison between the penalty imposed on child molesters under T.C.A. §§ 39–2–606 and 40–35–107(5) and those provided for like offenses in other jurisdictions. Clearly, the Tennessee defendant's sentence is grossly out of line with penalties elsewhere in the country. Disproportionality on this score gives added weight to the conclusion that the defendant's sentence in this case amounted to cruel and unusual punishment under the state constitution.

### 3. Appropriate Relief

Based on the foregoing analysis, I would hold that the sentence imposed on Billy Joe Harris is unconstitutional under Article I, Section 16 of the Tennessee Constitution. As for the appropriate remedy, I would follow the lead of the Michigan Supreme Court in *Bullock* and take the least drastic action available to cure the invalidity.

In *Bullock*, the Michigan court struck down only that part of the mandatory life sentence that made the defendant ineligible for parole. 440 Mich. at 42–3, 485 N.W.2d at 878. Here, it would be possible to invalidate the provision in T.C.A. § 40–35–107(5) that mandated Range II sentencing for child sex-abuse violators. As a result, the minimum Range I sentence for Harris's offense would be five years and the maximum would be 20 years. While more severe than the sentence provided for the same offense prior to 1979, the range of five to 20 years is reasonably proportionate to the eight to 12 years sentence for a Range I, Class B offender under the current Tennessee sentencing scheme, as well as to the punishment provided for similar offenses in other jurisdictions.

Finally, I would remand this case to the trial court for resentencing within the revised range of five to 20 years.

### APPENDIX A
#### Penalties For Child Molestation

| State | Offense | Penalty |
|---|---|---|
| Ala.Code §§ 13A–6–66, 13A–5–6(a)(3) | Sexual abuse in the first degree | 1–10 years |
| Alaska Stat. §§ 11.41.436, 12.-55.125(d) | Sexual abuse of a minor in the second degree | 10 years maximum |
| Ariz.Rev.Stat.Ann. §§ 13–1405(B), 13–604.01(A)(D) | Molestation of a child | 17 years (1st offense) 28 years (2nd offense) (plus or minus 5 years) |
| Ark.Stat.Ann. §§ 5–14–108, 5–4–401 | Sexual abuse in the first degree | 3–10 years |
| Cal.Penal Code § 288(a) | Lewd or lascivious acts on a minor under 14 years | 3, 6, or 8 years |
| Colo.Rev.Stat. §§ 18–3–405, 18–1–105(IV) | Sexual assault on a child | 2–8 years |
| Conn.Gen.Stat. § 53a–73(a) | Sexual assault in the fourth degree | less than a year |
| Del.Code Ann. title 11, § 768 | Unlawful sexual contact in the 2nd degree | 7 years (+ fine) |
| D.C.Code Ann. § 22–3501(a) | Indecent acts with children | 10 years maximum |
| Fla.Stat. §§ 800.04, 775.082 | Lewd, lascivious or indecent assault or act upon child | 15 years maximum |
| Ga.Code An. § 26–2019 | Child molestation | 1–20 years |
| Haw.Rev.Stat. §§ 707–732(1)(b), 706–660 | Sexual abuse in the first degree | 5 years maximum |

---

**8.** The minimum in Rhode Island is six years, and in South Carolina the sentencing judge may impose a fine *or* imprisonment at his or his discretion.

| State | Offense | Penalty |
|---|---|---|
| Idaho Code §§ 18–1506, 18–1508 | Sexual abuse of a child under 16 years; Lewd conduct with a minor child under 16 | 15 years; life |
| Ill.Rev.Stat. ch. 38, ¶¶ 12–16(c)(1), 1005–8–1(5) | Aggravated criminal sexual abuse | 3–7 years |
| Ind.Code §§ 35–42–4–3(b), 35–50–2–6 | Child molesting | 4 years (possible fine of $10,000) |
| Iowa Code §§ 709.8, 902.9(4) | Lascivious acts with a child | 5 years maximum (plus fine) |
| Kan.Stat.Ann. §§ 21–3518(1)(b), 21–4501(d) | Aggravated Sexual battery | 2–10 years |
| Ky.Rev.Stat.Ann. §§ 510.110, 532.060, 532.090 | Sexual abuse in the first degree | 1–5 years |
| La.Rev.Stat.Ann. § 14:43.1 | Sexual battery | 10 years maximum |
| Me.Rev.Stat.Ann. §§ 17A–225, 17–A–1252(2)(c) | Unlawful sexual contact | 5 year maximum |
| Md.Crim.Law Code Ann § 464(B) | Third degree sexual offense | 10 years maximum |
| Mass.Gen.L. ch. 265, §§ 13B, 35A. | Indecent assault and battery on a child under 14 | 10 years maximum |
| Mich.Comp. Laws § 750.520c | Second Degree criminal sexual conduct | 15 years maximum |
| Minn.Stat. § 609.343 | Criminal sexual conduct in the 2nd degree | 10 yrs $35,000 fine max. |
| Miss. Code Ann. § 97–5–23 | Touching, handling child for lustful purposes | 1–10 years and possible $10,000 fine |
| Mo.Rev.Stat. 566.100 | Sexual abuse in the 1st degree | 5 years maximum |
| Mont. Code Ann. § 45–5–502 | Sexual assault | 2–20 years |
| Neb.Rev.Stat §§ 28–320.01; | Sexual assault of a child | 5 years/$10,000 fine maximum |
| Nev.Rev.Stat. 201.230 | Lewdness with child under 14 | 1–10 years/$10,000 fine max. |
| N.H.Rev.Stat.Ann. §§ 632–A:3, 651:2 | Felonious sexual assault | 7 year maximum |
| N.J.Rev.Stat. §§ 2C:14–2a(6), 2C:43–6 | Sexual assault | 5–10 years |
| N.M.Stat.Ann. §§ 30–9–13(A), 31–18–15 | Criminal sexual contact of a minor in the third degree | 3 years |
| N.Y. Penal Law §§ 130.65, 70.00–70.15 | Sexual abuse in the first degree | 7 years maximum |
| N.C.Gen.Stat. §§ 14–202.1, 14–1.1(a)(8) | Taking indecent liberties with children | 10 years maximum |
| N.D.Cent. Code §§ 12.1–20–03(2), 12.1–32–01(2) | Gross sexual imposition | 20 years maximum |
| Ohio Rev. Code Ann. §§ 2907.05–2929.11(B)(3)(a) | Gross sexual imposition | 10 years maximum |
| Okla.Stat. Title 21, § 1123 | Lewd or indecent proposals or acts | 1–20 years |
| Or.Rev.Stat. §§ 163.425, 161.605 | First degree sexual abuse | 5 years maximum |
| R.I.Gen Laws §§ 11–37–8.3, 11–37–8.4 | Second degree child molestation | 6–30 years |
| S.C. Code Ann. § 16–15–140 | Committing lewd act upon child | Discretion of Judge |
| S.D. Codified Laws Ann. §§ 22–22–7, 22–6–1 | Sexual contact with child | 15 yr max and/or $10,000 fine |
| T.C.A. § 39–13–504; 40–35–111 (current) | Aggravated sexual battery | 8–30 yrs and possible $25,000 |
| Tex. Penal Code Ann. § 21.11, 12.33 | Indecency with child | 2–10 yrs ($10,000 fine permissible) |
| Utah Code Ann. §§ 76–5–404.1, 76–3–203(2) | Sexual abuse of a child | 1–15 years |

| State | Offense | Penalty |
|---|---|---|
| Vt.Stat.Ann. tit. 13, § 3252 | Sexual assault | 20 yrs max ($10,000 fine possible) |
| Va. Code Ann. § 18.2–67.3 | Aggravated sexual battery | 1–20 years |
| Wash.Rev. Code §§ 9A–44–100, 9A.20.021 | Indecent liberties | 10 yr max; $20,000 fine max. |
| W.Va. Code § 61–8B–7 | Sexual abuse in the 1st degree | 1–5 yrs; $10,000 fine possible |
| Wis.Stat. §§ 948.02, 939.50 | First degree sexual assault | 20 years maximum |
| Wyo.Stat. §§ 6–2–304, 6–2–306(a) | Sexual assault in the third degree | 5 years maximum |