IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
November 10, 2009 Session

## STATE OF TENNESSEE v. DARRYL HUBBARD

**Direct Appeal from the Criminal Court for Shelby County**
**No. 07-03060; 07-01581     Lee V. Coffee, Judge**

---

**No. W2008-02437-CCA-R3-CD  - Filed April 19, 2010**

---

The defendant, Darryl Hubbard, pled guilty in case number 07-01581 to possession of marijuana, third offense or greater, a Class E felony, and in case number 07-03060 to possession of more than 0.5 grams of cocaine with intent to sell, a Class B felony, and to possession of marijuana with intent to sell, a Class E felony.  The trial court sentenced the defendant as a multiple offender to four (4) years for case number 07-01581, to run consecutively to 07-03060 and to a prior case.  The trial court sentenced him as a multiple offender in case number 07-03060 to four (4)  years for the Class E felony, concurrent with eighteen (18) years for the Class B felony, to be served consecutively to 07-01581 and the prior case.  The defendant's effective sentence for 07-05181 and 07-03060 is twenty-two (22) years in the Tennessee Department of Correction, consecutive to a nineteen (19) year sentence in the prior case.  On appeal, the defendant contends that (1) the trial court erred by imposing consecutive sentences and (2) that his sentences are disproportionate to the offenses, amounting to cruel and unusual punishment.  Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Larry D. Sims, II, Memphis, Tennessee, for the appellant, Darryl Hubbard.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; William L. Gibbons, District Attorney General; and Stacy McEndree and Brian Winsett, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

## Background

We initially note that the transcript of the defendant's guilty plea hearing is not included in the record. However, the presentence report contains an agency statement containing the facts underlying the charges. The facts underlying case number 07-03060 are:

> On July 22, 2006, at 2245 hours, [Shelby County Sheriff's Office] narcotics [unit] executed a search warrant at 2396 Saratoga Ave[nue] with a M/B known as "Darryl" was named in the warrant [sic]. Detectives knocked, announced, and received no answer at the front door of the residence. Officers forced entry and secured the residence[,] finding no one inside the residence. After securing the residence, K-9 handler C. Grimes and his certified K-9 Lucy ran the residence with Lucy giving positive indication for narcotic odor in the middle bedroom on a table, on the TV area, and on a pillow on a couch. After searching the area[,] Detective McCall recovered a plastic bag with suspected crack cocaine, a digital scale with cocaine residue on the table, and a plastic bag with suspected cocaine on the TV. Detective Mills recovered a big fake puncture seal container with two bags of suspected marijuana, two plastic bags of U.S. currency[;] several small bags of suspected marijuana were located inside the bags, and a loaded .380 Lorcin pistol was under the pillow of the couch.

> No arrest[s] were made on the scene, and all evidence was transported to 1080 Madison for paperwork. Detective Grimes weighed and tested all evidence with positive results. The weights on the narcotics found are 1.5 g tgw crack cocaine, 1.7 g tgw cocaine, and 96.2 g tgw of marijuana. The money found totaled $283.00 in U.S. currency. Detective Walton found misc[ellaneous] paperwork with the defendant's name on it and also took a photograph of a marriage license with the defendant's name on it. All evidence [was] placed in the M[emphis] P[olice] D[epartment] property room and tagged . . . . This did occur in Shelby County, Tennessee . . . .

In March 2007, a Shelby County grand jury indicted the defendant in this case for (1) possession of more than 0.5 grams of cocaine with intent to sell, (2) possession of more than 0.5 grams of cocaine with intent to deliver, (3) possession of more than one-half ounce of marijuana with intent to sell, and (4) possession of more than one-half ounce of marijuana with intent to deliver. The defendant pled guilty to counts one and three on June 3, 2008, and the state dismissed counts two and four.

The facts underlying case number 07-01581 are:

Officers Stewart and Monistere were attempting a pick-up for a robbery suspect known as "Big Jason" [who] was in the area of Grand and Saratoga. Officers attempted to detain a suspect matching his description [who] ran south on Grand to a corner store where the suspect threw down [nine] small bags [of] marijuana. The marijuana was taken out of his right front pocket. Officers apprehended the suspect, frisked him, and detained him. Officers discovered this was not "Big Jason" but [the defendant]. [The defendant] became apologetic after detention. The defendant had no warrants so he was issued a misdemeanor citation in lieu of arrest. The marijuana was tested positive with a weight of 11.9 g tgw . . . .

In January 2007, a Shelby County grand jury indicted the defendant in case number 07-01581 for possession of marijuana, third offense or greater. The defendant pled guilty on June 3, 2008.

The trial court heard the following evidence at a bifurcated sentencing hearing on July 18, 2008, and September 12, 2008. Michael Burns testified that he is the store manager of the Firestone store located on Poplar Avenue in Memphis. He authenticated invoices that indicated that the defendant paid cash for several automotive repairs totaling around $300. The court admitted the invoices as an exhibit. On cross-examination, Mr. Burns testified that forty percent of his customers paid in cash.

Duwayne Smith testified that he rented 2396 Saratoga Avenue to the defendant and his wife in 2006 for one year. The defendant paid his $350 monthly rent in cash. On cross-examination, Mr. Smith testified that he never observed the defendant participating in illegal activity, and he was unaware of any illegal activity until he received a notice from the state. The court asked Mr. Smith to clarify what type of notice he received, to which Mr. Smith replied that the state notified him that the defendant was charged with drug-dealing out of that residence, and Mr. Smith would have to evict him.

The defense called Lisa Nelson, a friend of the defendant's wife who knew the defendant personally. Ms. Nelson testified that the defendant sold drugs to support his family when he was out of work. She said that she took the defendant job-hunting on occasion and would sometimes take him to and from work. Ms. Nelson testified that both the defendant and his wife did not have steady employment but were consistently looking for work. She attributed the defendant's inability to hold a job to his criminal record. She said that the defendant and his wife were homeless for a time because of their lack of employment. Ms. Nelson asked the court for leniency in sentencing the defendant because she knew he was already serving a nineteen-year sentence for similar charges, and she felt that nineteen years was sufficient time to serve for all of the defendant's charges. On cross-

examination, Ms. Nelson said that she would not characterize the defendant as a professional drug dealer.

The defendant's wife, Shelta Hubbard, testified that her husband sold drugs to support his family. They were homeless for a time because Mrs. Hubbard's mother, with whom she lived with while the defendant was incarcerated, would not allow them to live there after the defendant was released. Mrs. Hubbard testified that her husband grew up in a family of drug users. The defendant also used drugs and was using drugs when the police arrested him on these charges. She said that he had a history of drug charges and was currently serving nineteen years on similar charges. They had been married for five years and had a good marriage.

On cross-examination, Mrs. Hubbard said that she knew the defendant had sold drugs, but he was working at the time they got married. The defendant had two children from a previous relationship, of whom they occasionally had supervision, including the time they lived at 2396 Saratoga Avenue. Mrs. Hubbard testified that they were not home when the police executed the search warrant underlying case number 07-03060, but they were home when the police returned a month later. During that month, the defendant continued to sell drugs from the residence.

On re-direct examination, Mrs. Hubbard said that they were home when the police returned, and the police arrested the defendant at that time. She said that they were just getting by on the money that the defendant made from drug-dealing and lived "in the hard part of Orange Mound." When asked whether the defendant was the only drug dealer in Orange Mound, Mrs. Hubbard said, "Come on now. We talking [sic] about Orange Mound, Speedy Corner. Let's be real." (IV, 34) On re-cross examination, Mrs. Hubbard said that she sold their car to pay for the defendant's bond.

In determining the defendant's sentences, the trial court stated that it considered the presentence report, the principles of sentencing, the evidence and arguments presented by each party, the circumstances of the offenses, the statistical data on similar cases, and the statements made by the defendant, his wife, and their friend. The trial court found that the defendant was a Range II, multiple offender, because he had at least two prior felony convictions. The court found that enhancement factor one applied to the defendant because he had a "previous history of criminal convictions and behavior in addition to those necessary to establish the appropriate range." The court found that he had a total of four felony convictions and numerous misdemeanor convictions. The court further found that enhancement factor sixteen applied because "the defendant has been adjudicated to have committed delinquent acts as a juvenile that would constitute a felony if committed by an adult." The court found that the defendant committed the offense underlying case number 07-01581 while on bond for case number 07-03060; thus, enhancement factor thirteen

applied. The court found that enhancement factor eight applied - the defendant failed to comply with a sentence involving release into the community - and that factor nine applied - "the defendant was in possession of a pistol at th[e] residence when th[e] warrant was executed." The court gave great weight to each of the enhancement factors. The court found that the defendant committed the offenses to provide for his family but gave little weight to that mitigating factor. The court determined that the offenses involved more than a small amount of drugs, so that mitigating factor was inapplicable. The court additionally found that confinement was necessary to protect the community, to avoid depreciating the seriousness of the offense, and to provide an effective deterrence to others. The court determined that consecutive sentences were proper because the defendant was a professional criminal with an extensive record. Additionally, the court found that "consecutive sentences reasonably related to the severity of the offenses committed by the defendant and that consecutive sentences are necessary in order to protect this public, this community, from . . . future criminal acts committed by [the defendant]. [The defendant] is a dangerous person."

The trial court sentenced the defendant to eighteen years for the Class B felony and four years for each Class E felony. The court determined that the sentences for 07-03060 would run concurrently, for an effective eighteen-year sentence to be served in the Tennessee Department of Correction. Based on the court's finding that the defendant committed the offense underlying 07-01581 while on bond, the court ordered that the sentences for 07-03060 would be consecutive to the four-year sentence for 07-01581. Because the court found the defendant to be a professional criminal with an extensive criminal history, the court ordered that the effective twenty-two-year sentence for case numbers 07-01581 and 07-03060 would run consecutive to the sentence in case number 06-09390. The defendant then filed this timely appeal.

**Analysis**

*I. Consecutive Sentences*

The defendant argues that the trial court erred in ordering that the defendant serve the twenty-two-year sentence for cases 07-01581 and 07-03060 consecutively to the nineteen-year sentence in case 06-09390. Specifically, the defendant contends that the trial court abused its discretion by not applying the general sentencing principles, namely, that the sentence must be justly deserved in relation to the offenses and that unjust disparities between defendants must be eliminated. The defendant has not argued that the trial court erred in imposing consecutive sentences for cases 07-01581 and 07-03060 nor does he contest the length, range, or manner of serving his sentences. The state responds that this court should presume that the trial court's sentencing determinations were correct because the defendant did not include the guilty plea transcript in the appellate record. Alternatively, the state argues that trial court followed statutory procedure in sentencing the defendant, and

the record supports the trial court's determinations. We find that the defendant's argument is without merit.

The record before this court does not contain a transcript of the guilty plea. In order to conduct an effective appellate review of sentencing, a transcript of the guilty plea hearing is necessary. *State v. Keen*, 996 S.W.2d 842, 844 (Tenn. Crim. App. 1999). The transcript of the guilty plea is usually necessary in order for this court to ascertain the facts and circumstances surrounding the offense. Indeed, the guilty plea hearing is the equivalent of a trial. *Id*. at 843. In the absence of a transcript of a guilty plea, this court must generally conclude that the sentence imposed by the trial court was correct. *Id*. at 844. However, the record in this matter is sufficient to determine the issues presented by the defendant.

A defendant who challenges his or her sentence has the burden of proving the sentence imposed by the trial court is improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Comments; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). It is this court's duty to conduct a *de novo* review of the record with a presumption that the trial court's determinations are correct when a defendant appeals the length, range, or manner of service of his or her sentence. Tenn. Code Ann. § 40-35-401(d). The presumption of correctness is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Pettus*, 986 S.W.2d 540, 543-44 (Tenn. 1999).

In this case, the defendant is challenging the imposition of consecutive sentencing, rather than the length, range, or manner of serving his sentence. Generally, it is within the discretion of the trial court to impose consecutive sentences if it finds by a preponderance of the evidence that at least one of following statutory criteria apply:

> (1) [t]he defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;
>
> (2) [t]he defendant is an offender whose record of criminal activity is extensive;
>
> (3) [t]he defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) [t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) [t]he defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) [t]he defendant is sentenced for an offense committed while on probation; or

(7) [t]he defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).

If the court concludes the defendant is a dangerous offender under Tennessee Code Annotated section 40-35-115(b)(4), it must make two further determinations in addition to applying general sentencing principles. *State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002). First, it must find an extended sentence is necessary to protect the public from further criminal conduct by the defendant, and, second, it must find consecutive sentencing to be reasonably related to the severity of the offenses. *State v. Wilkerson*, 905 S.W.2d 933, 939 (Tenn. 1995). However, such specific factual findings are unnecessary for the other categories of Tennessee Code Annotated section 40-35-115(b). *State v. Lane*, 3 S.W.3d 456, 461 (Tenn. 1999).

The trial court imposed consecutive sentencing on the bases that the defendant met the qualification under Tennessee Code Annotated section 40-35-115(b)(1), that the defendant is a professional criminal; under subdivision (2), that the defendant has an extensive criminal record; and under subdivision (4), that the defendant is a dangerous offender. As for subdivision (1), the defendant's witnesses at the sentencing hearing testified that the defendant sold drugs to support his family and rarely held a job, thus supporting that the defendant sold drugs as a source of livelihood. The record also reveals that the defendant had four prior felony convictions, an extensive list of misdemeanors, and a juvenile record beginning at age twelve. The defendant clearly has an extensive criminal record, which alone would be sufficient to impose consecutive sentencing. The trial court also determined

that the defendant was a dangerous offender. In support of its findings that the imposition of consecutive sentencing reasonably relates to the severity of the offenses and is necessary to protect the community, the court specifically stated:

> [E]verytime he [sells] dope in this community and goes out and continues to [sell] drugs in this community, every rock of cocaine that Mr. Hubbard [sells] is in fact a dangerous act in which people absolutely can and often are killed by drugs that are sold in this community. And this Court finds that consecutive sentences in this case are absolutely necessary to protect this community and they are reasonably related to the severity of these offenses. A person who has been committing crimes for 23 years, gets arrested, makes bond, goes out and continues to [sell] dope, continues to [sell] everybody [sic] in his neighborhood - - tell everyone in that neighborhood that I will [sell] as many, as much drugs that I want and there is nothing that judges will do about this because I've been getting away with this stuff for 22 years [sic].

We conclude that the trial court made sufficient findings of fact to support the imposition of consecutive sentencing. To the extent that the defendant argues that the trial court did not consider whether the sentence was justly deserved in relation to the offenses, the court's findings in its discussion of the *Wilkerson* factors demonstrate that the court gave proper consideration to that sentencing principle. Thus, the defendant is without relief on this issue.

The defendant further argues that consecutive sentences violates the principle that unjustified disparities in sentencing should be eliminated. The defendant claims that "[t]he disparity in the present case is clearly evident because if every defendant who had a criminal record were sentenced to 19 years and then sentenced again in addition to that, running the sentences concurrent or consecutive there would be a great amount of inconsistent punishment violative of justice." The defendant presented no authority in support of his claim. This issue is waived as the defendant has failed to cite authority to support his argument. Tenn. Ct. Crim. App. R. 10(b); *State v. Schaller*, 975 S.W.2d 313, 318 (Tenn. Crim. App. 1997).

## II. Cruel and Unusual Punishment

The defendant contends that the imposition of consecutive sentences, amounting to forty-one years, violates constitutional prohibitions on cruel and unusual punishment. The state responds that his sentence is not grossly disproportionate to his offenses and, therefore, does not constitute cruel and unusual punishment. We agree with the state.

The Eighth Amendment of the United States Constitution forbids cruel and unusual punishment, and the United States Supreme Court has interpreted this provision to mean that a sentence must be proportional to the underlying offense. *State v. Harris*, 844 S.W.2d 601, 602 (Tenn. 1992) (citing *Weems v. United States*, 217 U.S. 349, 347 (1910)). The Tennessee Supreme Court has said that the similarity in language between the federal constitution and Article I, section 16, of the state constitution "does not foreclose a more expansive interpretation of the Tennessee constitutional provision." *Id.* at 603. The state supreme court also noted that "because reviewing courts should grant substantial deference to the broad authority legislatures possess in determining punishments for particular crimes, '[o]utside the context of capital punishment, *successful* challenges to the proportionality of particular sentences [will be] exceedingly rare.'" *Id.* at 602 (quoting *Solem v. Helm*, 463 U.S. 277, 289-90 (1983) (emphasis in original)). The methodology when examining the proportionality of a noncapital sentence is:

> [T]he sentence imposed is initially compared with the crime committed. Unless this threshold comparison leads to an inference of gross disproportionality, the inquiry ends-the sentence is constitutional. In those rare cases where this inference does arise, the analysis proceeds by comparing (1) the sentences imposed on other criminals in the same jurisdiction, and (2) the sentences imposed for commission of the same crime in other jurisdictions.

*Id.* at 603. When making the initial comparison between the offense and the sentence, this court has held the following factors to be relevant:

> (1) the nature of the crime, including whether society views the crime as serious or relatively minor and whether the crime is violent or non-violent; (2) the circumstances of the crime, including the culpability of the offender, as reflected by his intent and motive, and the magnitude of the crime; and (3) the existence and nature of any prior felonies if used to enhance the defendant's penalty.

*State v. Smith*, 48 S.W.3d 159, 171 (Tenn. Crim. App. 2000) (citing *Solem*, 463 U.S. at 290-91). "Factors relevant to the harshness of a penalty include the type of penalty imposed and, if a term of imprisonment, the length of the term and the availability of parole or other forms of early release." *Id.* (citing *Solem*, 463 U.S. at 297).

In this case, the trial court followed statutory procedure in sentencing the defendant to twenty-two years for cases 07-01581 and 07-03060. For the Class B felony, the minimum sentence for a Range II offender is twelve years. The court applied enhancement factors, which the defendant has not challenged, to increase the sentence to eighteen years. For the two Class E felonies, the minimum sentence is two years. After applying the enhancement factors, the trial court sentenced the defendant to four years, the maximum sentence. The sentencing statutes mandated that the trial court run the offenses in 07-01581 consecutively

to 07-03060 because the defendant committed one while on bond for the other. The release eligibility for a Range II, multiple offender, is thirty-five percent. Because the trial court followed statutory procedure in determining the defendant's sentences for 07-01581 and 07-03060, we give deference to the legislative determination of the punishment for the offenses and hold that the sentences for 07-01581 and 07-03060 are not grossly disproportionate to the offenses. The sentence for 06-09390 is not before this court; we, therefore, draw no conclusion as to whether that sentence is proportional. The remaining question, then, is whether ordering the defendant to serve the twenty-two year sentence consecutive to the nineteen-year sentence amounts to cruel and unusual punishment.

The state concedes that the amount of drugs involved in 07-01581 and 07-03060 are relatively small; however, the defendant has numerous prior convictions, several for drug dealing. The defendant's own witnesses admitted that he sells drugs to make a living. The legislature determined that consecutive sentences are appropriate, though not mandated, when defendants have extensive criminal histories and are professional criminals. As we previously determined, the trial court followed the statutory procedure and made sufficient findings to support the imposition of consecutive sentences. Giving deference to the legislative determination of punishment, after finding that the trial court did not abuse its discretion, we conclude that forty-one years, with release eligibility beginning after the defendant serves thirty-five percent of his sentence, is not grossly disproportionate to the offenses, especially considering the defendant's history. Therefore, we hold that the imposition of consecutive sentences does not amount to cruel and unusual punishment. The defendant is without relief on this issue.

## Conclusion

Based on the foregoing reasons, we affirm the judgments of the trial court.

_____
J.C. McLIN, JUDGE

-10-