IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville December 18, 2012

**STATE OF TENNESSEE v. TAVARIA MERRITT**

**Appeal from the Criminal Court for Wilson County**
**No. 10-CR-18    David Earl Durham, Judge**

_____

**No. M2012-00829-CCA-R3-CD - Filed December 10, 2013**

_____

The Defendant, Tavaria Merritt, pleaded guilty to nine counts of rape of a child, Class A felonies.  *See* T.C.A. § 39-13-522 (2010).  He was sentenced to nine consecutive terms of twenty-five years for an effective 225-year sentence to be served at 100%.  The Defendant was seventeen years old when the offenses were committed and nineteen years old when he pleaded guilty.  On appeal, the Defendant contends that his effective sentence is the equivalent of life imprisonment without the possibility of parole and is cruel and unusual punishment under the United States and Tennessee Constitutions.  *See Graham v. Florida*, 560 U.S. 48 (2010).  Although *Graham* does not apply to the Defendant's effective 225-year sentence, we conclude that the sentence is excessive, reverse the judgments of the trial court, and remand for entry of judgments reflecting an effective fifty-year sentence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Reversed,**
**Case Remanded**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., J., joined.  CAMILLE R. MCMULLEN, J., filed a dissenting opinion.

Comer L. Donnell, District Public Defender; and E. Marie Farley, Assistant Public Defender, for the appellant, Tavaria Merritt.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Tom P. Thompson, Jr., District Attorney General; and Thomas H. Swink, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

According to the State's recitation of the facts at the guilty plea hearing on March 21, 2011,

> [I]n early summer of 2009 some concerned parents of children who had contact with this Defendant, Mr. Tavaria Merritt, reported to authorities that this Defendant had sexually assaulted their children. These children knew the Defendant through a local Lebanon church that this Defendant served the youth at this particular church.
>
> Several children were interviewed at the Child Advocacy Center. . . . Three of the boys who were then ten and eleven years of age disclosed . . . that this Defendant, Mr. Merritt, had penetrated them orally and anally on separate occasions.
>
> . . . .
>
> [O]ne [victim] was ten years old and two [victims] were eleven years old at the time.
>
> . . . .
>
> Those disclosures were captured on audio and video at the Child Advocacy Center, and of course copies of those were turned over to the defense. These acts occurred primarily at the Defendant's residence where the Defendant lived with his parents in Wilson County.
>
> [O]ne of the acts . . . that we have not counted occurred at a hotel room in Mississippi. That's an uncharged act, but the ones that we're talking about primarily occurred here at his residence which was in Wilson County. So all of the indicted offenses are Wilson County offenses.
>
> Shortly after those children disclosed to the Child Advocacy Center what this Defendant had done, Detective Harbaugh . . . made contact with the Defendant and the Defendant's mother and made efforts to try to speak with this Defendant about those allegations.

[O]n August 20, 2009, Mr. Merritt appeared at the Wilson County Sheriff's Department unannounced and . . . said that he wanted to speak to Detective Harbaugh about the allegations that the children had made.

On that same day, Detective Harbaugh interviewed the Defendant[,] and the Defendant confessed . . . to penetrating the three boys who had disclosed the abuse. Now that interview was captured on audio and video, and as the Court knows, a suppression hearing was heard . . . and a copy of that audio/video was made an exhibit during that hearing. . . .

This Defendant confessed. His confession generally matched the disclosures which included both oral sex and anal penetration with all three of the boy victims that had disclosed. . . .

The Defendant, whose date of birth is July 21, 1991, was seventeen years old at the time that these offenses were committed. [W]hen Mr. Merritt was interviewed by Detective Harbaugh in August of 2009, this Defendant had turned eighteen years of age. . . .

This Defendant was charged initially in Juvenile Court[,] and it was transferred from Juvenile Court on December 15, 2009[. He] was indicted by the Wilson County Grand Jury . . . on January 12, 2009.

The trial court noted that a suppression hearing was held previously regarding the Defendant's recorded confession. The court incorporated as part of the factual basis for the guilty pleas the suppression hearing transcript and recorded confession, which are not included in the appellate record.

At the sentencing hearing on June 1, 2011, the presentence report was received as an exhibit. The report showed that the Defendant was a minor when the offenses were committed and that he had no previous criminal history or gang affiliation. The Defendant had a tenth-grade education and reported excellent physical and mental health, although he took blood pressure medication. He denied alcohol and drug use and reported having a son, who was born on March 9, 2010. The Defendant's employment history showed his working for Debbie's Farming from 2001 to 2008, Paul's Smokehouse from January 2007 to December 2007, and Arby's from February to March 2011.

The presentence report showed that the Defendant was the victims' youth minister and knew the victims for one year. The report showed that the abuse occurred between January and June 2009. Only one victim impact statement was submitted to the court. The victim

said he became angry when he talked about the abuse. He said, "I would never think in a million years that a minister would try to rape a kid. I thought the church would be the safest place[.]" The victim wanted to be a pastor. The victim's mother reported that the victim was receiving counseling.

David Stanfield, the probation officer who prepared the presentence report, testified that the Defendant was the victims' youth minister and that two of the victims were brothers. On cross-examination, he stated that although his investigation showed the abuse occurred between January and June 2009, he did not know if all the incidents related to each victim occurred on the same day or different days. He said that one of the victims reported receiving counseling and that he did not see evidence of long-term psychological counseling or medical treatment associated with the abuse. On redirect examination, he agreed that the victims were receiving counseling.

The trial court sentenced the Defendant to twenty-five years for each count of child rape as required by law and ordered that each conviction be served consecutively, for an effective 225-year sentence. The court found that Tennessee Code Annotated section 40-35-15(b)(5) (2010) applied, which states that consecutive sentencing is permitted when

> [t]he defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and . . . victims, the time span of the defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the . . . victims.

Regarding the aggravating circumstances arising from the relationship between the Defendant and the victims, the trial court examined the mitigating and enhancement factors. The court found that no mitigating factors applied. *See* T.C.A. § 40-35-113 (2010). The court noted that although the Defendant was a minor when the offenses were committed, the Defendant was a father and that his fatherhood meant he was "old enough to face the consequences" of his actions.

The trial court found that enhancement factors (3), (4), (6), (7) and (14) applied. *See id*. §§ 40-35-114(3) ("The offense involved more than one (1) victim"), -114(4) ("A victim of the offense was particularly vulnerable because of age or physical or mental disability"), -114(6) ("The personal injuries inflicted upon . . . the victim [were] particularly great"), -114(7) ("The offense . . . was committed to gratify the defendant's desire for pleasure or excitement"), and -114(14) ("The defendant abused a position of public or private trust . . . in a manner that significantly facilitated the commission or the fulfillment of the offense").

The court found that factor (4) applied because it concluded that based on the court's own personal experience in raising children and stepchildren, ten- and eleven-year-old children were particularly more vulnerable than twelve and thirteen year olds. Regarding factor (6), the court stated that although only one victim impact statement was submitted, the victims had to live with the rapes for the remainder of their lives. The court acknowledged that no proof was presented regarding the victims' physical and mental injuries but stated "we've all seen it in prior cases . . . and I just think we can all note that anybody [who is] a victim of a violent sexual assault carries a heavy burden their entire life[.]" The court found that factor (6) applied based on the victim impact statement. The court noted that it had seen cases in which victims of sexual assault could not form relationships and used drugs to forget the abuse. The court stated that factor (14) applied because the Defendant met the victims when acting as a youth minister and the victims trusted him due to his church affiliation.

The trial court found that the time span of the Defendant's undetected sexual activity with the victims was from January 2009 to June 2009, which was "quite . . . some time." Regarding the nature and scope of the of the sexual conduct, the court found that anal and oral intercourse were involved. Regarding the extent of the residual, physical, and mental damage to the victims, the court stated "that you don't have to sit in my position to know the damage that this type of activity causes to the youth of our country[.]"

The trial court stated that although the Defendant was young, his life was over regardless of whether it sentenced him to twenty-five or 225 years. The court said it was no longer interested in the Defendant's life and wanted to protect the children and the public from the Defendant. The court noted that sentencing the Defendant to twenty-five years would send a message to potential defendants that the penalty for twenty rapes was the same for one rape. The court stated that it intended for the Defendant to remain in confinement for the remainder of his life. This appeal followed.

The Defendant contends that his effective 225-year sentence violates the Eighth Amendment to the United States Constitution and article I, section 16 of the Tennessee Constitution. He argues that he was seventeen years old when the offenses were committed and that pursuant to *Graham v. Florida*, 540 U.S. 48, 130 S. Ct. 2011 (2010), his sentence is the equivalent of life imprisonment without the possibility of parole in violation of the federal and state constitutions. The State responds that the Defendant's effective sentence does not violate the the United States or Tennessee Constitutions. We agree with the State.

The Eighth Amendment to the United States Constitution and article I, section 16 of the Tennessee Constitution state, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII; Tenn. Const. art. 1, § 16. The Supreme Court has concluded that "[t]he concept of proportionality

is central to the Eighth Amendment," and the "ban on cruel and unusual punishments [embodies] 'the precept of justice that punishment for crime should be graduated and proportioned to [the] offense.'" *Graham*, 130 S. Ct. at 2021 (quoting *Weems v. United States*, 217 U.S. 349, 376 (1910)).  Before *Graham*, the Court reviewed proportionality of sentencing based on two classifications, challenges to the length of term-of-years sentences and categorical restrictions on the death penalty.  *Id.*

Under the length of term-of-years sentence classification, courts determine if sentences are excessive by comparing the gravity and severity of the offense.  *Id.* at 2021-22 (citing *Harmelin v. Michigan*, 501 U.S. 957 (1991)).  If a court determines a sentence is grossly disproportionate, "the court should . . . compare the . . . sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions."  *Id.* at 2022.  If the comparison confirms the court's conclusion that the sentence is disproportionate, the sentence is cruel and unusual.  *Id.*

Under the application of categorical restrictions in death penalty cases, the focus is the nature of the offense and the characteristics of the defendant.  This approach considers "'objective indicia of society's standards, as expressed in legislative enactments and state practice' to determine whether there is a national consensus against the sentencing practice at issue."  *Id.* (quoting *Roper v. Simmons*, 543 U.S. 551, 572 (2005)).  The Supreme Court applied the categorical approach in *Graham*, which challenged a term-of-years sentence.  The Court concluded that life imprisonment without the possibility of parole was cruel and unusual punishment when imposed against juvenile offenders convicted of offenses that do not involve homicides.

Tennessee courts are charged with applying a three-pronged test when determining if a particular punishment is cruel and unusual for a capital offense.  Our supreme court has concluded that the inquiry involves asking "[f]irst, does the punishment for the crime conform with contemporary standards of decency?  Second, is the punishment grossly disproportionate to the offense?  Third, does the punishment go beyond what is necessary to accomplish any legitimate penological objective?"  *State v. Black*, 813 S.W.2d 166, 189 (Tenn. 1991) (quoting *State v. Ramseur*, 524 A.2d 188, 210 (N.J. 1878)).  Our supreme court adopted the proportionality test delineated in *Harmelin*,  for determining if sentences in noncapital cases are cruel and unusual.  The court said,

> [T]he sentence imposed is initially compared with the crime committed. Unless this threshold comparison leads to an inference of gross disproportionality, the inquiry ends – the sentence is constitutional.  In those rare cases where this inference does arise, the analysis proceeds by comparing (1) the sentences imposed on other criminals in the same jurisdiction, and (2)

-6-

the sentences imposed for commission of the same crime in other jurisdictions.

*State v. Harris*, 844 S.W.2d 601, 603 (Tenn. 1992). Regarding noncapital cases, the Supreme Court acknowledged that successful challenges to the proportionality of sentences would be rare. *See Solem v. Helm*, 463 U.S. 277, 289-90 (1983) (internal quotation omitted).

In *Graham*, the sixteen-year-old defendant was prosecuted as an adult for armed burglary and attempt to commit armed robbery. *Id.* at 2018. He was sentenced to probation but violated the conditions of his release, and the trial court sentenced him to life imprisonment for armed burglary and fifteen years for attempted robbery. Florida no longer provided parole to its offenders, which gave the defendant no opportunity for release, except executive clemency. The Supreme Court concluded that the sentence was cruel and unusual and stated that

> [a] State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime. What the Sate must do, however, is give defendants . . . [a] meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. . . . [W]hile the Eighth Amendment forbids a State from imposing life without parole . . . on a juvenile nonhomicide offender, it does not require a State to release that offender during his natural life. Those who commit truly horrifying crimes as juveniles may turn out to be irredeemable, and thus deserving of incarceration for the duration of their lives. The Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life. It does forbid States from making the judgment at the outset that those offenders never will be fit to reenter society.

*Id.* at 2030. The Court emphasized that *Graham* concerned "only those juvenile offenders sentenced to life without parole solely for a nonhomicide offense." *Id.* at 2030, 2052 n.11 (Thomas, J., dissenting) (noting that the majority's analysis excluded "all juveniles sentenced to lengthy term-of-years sentences"). Likewise, state and federal courts have overwhelmingly refused to extend *Graham* to juvenile offenders who were not sentenced to life without the possibility of parole but nonetheless received lengthy sentences that might prevent their release. *See Bunch v. Smith*, 685 F.3d 546, 550 (6th Cir. 2012) (concluding that *Graham* "did not clearly establish that consecutive, fixed-term sentences for juveniles who commit multiple nonhomicide offenses are unconstitutional when they amount to the . . . equivalent of life without parole"), *cert. denied sub nom Bunch v. Bobby*, — U.S. —, 133 S. Ct. 1996 (2013); *see also Middleton v. State*, 721 S.E.2d 111 (Ga. Ct. App. 2011)

(concluding that *Graham* did not apply to an aggregate sentence of thirty years without parole for armed robbery, two counts of aggravated assault, kidnapping, theft, and sexual assault), *cert denied*, — U.S. —, 133 S. Ct. 867 (2013); *Angel v. Commonwealth*, 704 S.E.2d 386, 402 (Va. 2011) (concluding that *Graham* did not apply to a sixteen-year-old defendant who was sentenced to three terms of life imprisonment for sex-related offenses when the relevant statute provided for conditional release at the age of sixty), *cert denied*, — U.S. —, 132 S. Ct. 344 (2011). *Compare People v. Mendez*, 114 Cal. Rptr. 3d 870, 883-84 (Cal. Ct. App. Sept. 1, 2010) (concluding that a sixteen-year-old defendant's sentence of eighty-four years to life imprisonment for a violent, nonhomicide offense violated the Eighth Amendment under the traditional proportionality review and rejecting *Graham* because it applied only to juveniles sentenced to life without parole), *with People v. Caballero*, 282 P.3d 291 (Cal. 2012) (concluding that *Graham* applied to a fourteen-year-old defendant's sentence of 110-years to life imprisonment for attempt to commit murder).

The Defendant fails to present an argument that his sentence is grossly disproportionate under the terms-of-years approach or that his sentence violates *Graham*'s categorical approach. Although the Defendant's effective 225-year sentence is the equivalent of life imprisonment, the sentence does not violate *Graham*'s specific holding because he was not sentenced to life imprisonment without the possibility of parole. We conclude that *Graham* applies only to juveniles sentenced to life imprisonment without the possibility of parole for nonhomicide offenses and that the Defendant is not entitled to relief on this basis.

The Defendant also contends that his effective sentence is excessive and "is not the least severe measure available to achieve the purpose for which the sentence is imposed." The State responds that the trial court did not abuse its discretion. We conclude that although consecutive sentencing is permitted, the Defendant's effective 225-year sentence violates the purposes and principles of sentencing. We reverse the judgments and remand for entry of judgments reflecting a fifty-year sentence.

The Tennessee Supreme Court adopted the present standard of review for sentencing in *State v. Bise*, 380 S.W.3d 682, 706 (Tenn. 2012). The length of a sentence "within the appropriate statutory range [is] to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *Id.* at 708. In determining the proper sentence, the trial court must consider: (1) any evidence received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee, (7) any statement that the defendant made on his own behalf, and (8) the potential for rehabilitation

or treatment. T.C.A. §§ 40-35-102, -103, -210 (2010); *see State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991); *State v. Moss*, 727 S.W.2d 229, 236 (Tenn. 1986).

Challenges to a trial court's application of enhancement and mitigating factors are reviewed under an abuse of discretion standard. *Bise*, 380 S.W.3d at 706. We must apply "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Id.* at 707. "[A] trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Id.* at 706. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld." *Id.*

The determination of concurrent or consecutive sentences is a matter left to the discretion of the trial court and should not be disturbed on appeal absent an abuse of discretion. *State v. Blouvet*, 965 S.W.2d 489, 495 (Tenn. Crim. App. 1997). Consecutive sentencing is guided by Tennessee Code Annotated section 40-35-115(b) (2010), which states, in relevant part, that the court may order sentences to run consecutively if it finds by a preponderance of the evidence that:

> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and . . . victims, the time span of the defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the . . . victims[.]

We conclude that the trial court properly applied 40-35-115(b)(5) in ordering consecutive sentencing but that the Defendant's effective 225-year sentence violates the purposes and principles of our sentencing statutes. In addition to satisfying one criteria in Code section 40-35-115(b), a consecutive sentence must comply with the general sentencing principles that a sentence be deserved in relation to the seriousness of the offense, be no greater than that deserved for the offense committed, and be the least severe measure necessary to achieve the purposes for which the sentence was imposed. *See* T.C.A. §§ 40-35-102(1), -103(2), -103(4) (2010); *see also State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002).

In *David Lamar Hayes*, the defendant was convicted of thirteen counts of rape of a child and seven counts of rape and received an effective 220-year sentence. *State v. David Lamar Hayes*, No. M2002-01331-CCA-R3-CD (Tenn. Crim. App. Aug. 9, 2004). The defendant was thirty-seven years old at the sentencing hearing and had no previous criminal

history. The abuse involved one victim and occurred over a ten-month period while the defendant lived with the victim and her mother. This court reduced the sentence to sixty-six years because the effective sentence was greater than that deserved, failed to reflect the least severe measure necessary to achieve the purposes of sentencing, and created an unjustified disparity in sentencing. *Id.*, slip op. at 11. The court stated,

> Ordinarily this court does not reduce an effective sentence when consecutive sentencing is justified. In most instances, it is well within the discretion of the trial court to determine which sentences should run consecutively. However, we believe this particular effective sentence of 220 years far exceeds that allowed under our sentencing principles.

*Id.*, slip op. at 12. Likewise, we conclude that the Defendant's sentence exceeds that allowed under the purposes and principles of sentencing. The effective 225-year sentence is not the least severe measure necessary to protect the victims and the public from the Defendant's future criminal conduct and fails to reflect the Defendant's potential for rehabilitation. We note the trial court commented that although the Defendant was young, his life was over regardless of whether it sentenced him to twenty-five or 225 years. We also note the court stated that the Defendant would not be alive after a twenty-five-year sentence, although the record shows the Defendant would have been in his mid- to late-forties after twenty-five years. These comments indicate the lack of a need for the 225-year sentence. We conclude that two consecutive terms of twenty-five years complies with the purposes and principles of sentencing that the Defendant's sentence be the least severe measure necessary to protect the victims and the public from the Defendant's future criminal conduct, bears some relationship to his potential for rehabilitation, is deserved in relation to the seriousness of the offense, and is no greater than that deserved for the offense committed.

At the sentencing hearing, the probation officer could not determine when any of the acts of abuse occurred other than the six-month time frame listed in the indictment. Counsel argued that the discovery materials contained evidence that the acts of abuse involving the two victims who were brothers occurred on the same day, and no evidence or argument was presented showing otherwise. Although the trial court did not address the discovery at the hearing, the record suggests that the six-month time frame listed in the indictment might be misleading regarding two of the three victims. We note that this factor has been applied in cases involving greater lengths of time. *See, e.g., State v. Brown*, 373 S.W.3d 565, 568 (Tenn. Crim. App. 2011) (alleging sexual abuse spanning seven years); *see also Frank Crittenden v. Charles Jones, Warden, ex rel. State of Tennessee*, No. 03C01-9707-CC-00315 (Tenn. Crim. App. Sept. 9, 1998) (alleging sexual abuse spanning ten years). We note, though, that a six-month time frame does not bar the imposition of consecutive sentences.

*See David Lamar Hayes*, slip op. 1 (consecutive sentences permitted for abuse spanning ten months).

Although we agree with the trial court's finding enhancement factors (3), (7), and (14) applied, the court's application of enhancement factors (4) and (6) in relation to the residual, physical and mental damage suffered by the victims is more problematic. The trial judge improperly relied on his own experience as a judge and father in applying enhancement factors (4) and (6). *See* T.C.A. § 40-35-114(4), (6). A trial court must only consider "evidence in the record of the trial, the sentencing hearing, the presentence report and the record of prior felony convictions filed by the district attorney general with the court." *Id.* § 40-35-210(f) (2010); *see State v. Hooper*, 39 S.W.3d 1, 12 (Tenn. 2001); *State v. Nunley*, 22 S.W.3d 282, 288 (Tenn. Crim. App. 1999). No evidence was presented that the victims, ages ten and eleven, were particularly vulnerable compared to other twelve- and thirteen-year-old children. Likewise, no evidence was presented that the personal injuries inflicted upon the victims were particularly great. Although one victim impact statement was submitted to the court showing that the victim was angry about the abuse and was receiving counseling, the trial judge stated that rape victims had future difficulty forming relationships and routinely used drugs to forget the abuse. A court's general observations that ten- and eleven-year-old children are more vulnerable than twelve- and thirteen-year-old children and that rape victims have difficulty forming relationships and routinely use drugs to forget the abuse "cannot serve as a substitute for factual findings containing comparisons" based on evidence presented at sentencing. *See State v. Fields*, 40 S.W.3d 435, 442 (Tenn. 2001). The court noted that no evidence was presented of the victims' physical injuries.

Regarding the nature and scope of the offenses, we note that the record does not include the Defendant's confession or the transcript of the suppression hearing, which were incorporated into the factual basis supporting the Defendant's guilty pleas. The record contained three affidavits of complaint. The affidavit of complaint from the eleven-year-old victim states that the Defendant performed oral sex on the victim twice, that the victim performed oral sex on the Defendant once, and that the Defendant placed his penis inside the victim's anus. The affidavit of complaint from the second eleven-year-old victim states that the victim performed oral sex on the Defendant twice and that the Defendant placed his penis inside the victim's anus. The affidavit of compliant regarding the ten-year-old victim states that the victim performed oral sex on the Defendant once and that the Defendant placed his penis inside the victim's anus. The trial court noted that the Defendant's confession "matched" the victims' allegations. We conclude that the State did not show that the rapes were more egregious or extreme than other child rapes and that a 225-year sentence is not justified.

Although the trial court erroneously applied enhancement factors (4) and (6), the court properly applied enhancement factors (3), (7), and (14), which support the imposition of consecutive sentences pursuant to Code section 40-35-115(b)(5). Likewise, the Defendant knew the victims for one year and was their youth minister. The Defendant used that position of trust to accomplish the sexual abuse. We note that the victim impact statement submitted to the court reflects that one of the victims never suspected that a youth minister would be capable of such conduct. Although the record reflects that the abuse occurred between January and June 2009, the record also reflects that the abuse suffered by the two victims who were brothers occurred on the same day. The record reflects that the victims, ages ten and eleven, suffered anal penetration by the Defendant, that they performed oral sex on the Defendant, and that the Defendant performed oral sex on them. As a result of the abuse, the victims received counseling, although evidence of long-term impact was not presented at the sentencing hearing. For these reasons, we conclude that two consecutive twenty-five-year sentences are appropriate and comply with the purposes and principles of our Sentencing Act.

In consideration of the foregoing and the record as a whole, we reverse the trial court's judgments and remand the case for entry of judgments reflecting an effective fifty-year sentence. The twenty-five-year sentences for rape of a child in counts 1 and 5 of the indictment shall be served consecutively, and the remaining sentences shall be served concurrently, for an effective fifty-year sentence.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE