IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 09, 2014

## STATE OF TENNESSEE v. LARRY DOUGLAS CLEMONS

**Appeal from the Circuit Court for Smith County**
**Nos. 12CR213, 12CR236, 12CR302      John D. Wootten, Jr., Judge**

---

**No. M2014-00131-CCA-R3-CD - Filed April 17, 2015**

---

Defendant, Larry Douglas Clemons, pled guilty in Case No. 12-CR-213 to four counts of trafficking for sexual servitude (Counts 1-4), one count of attempt to commit trafficking for sexual servitude (Count 5), especially aggravated sexual exploitation of a minor (Count 6), thirteen counts of aggravated sexual exploitation of a minor (Counts 7-19), and six counts of sexual exploitation of a minor (Counts 20-25). In Case No. 12-CR-236 Defendant pled guilty to one count of aggravated sexual exploitation of a minor, and in Case No. 12-CR-302 Defendant pled guilty to two counts of trafficking for sexual servitude (Counts 1-2) and five counts of statutory rape (Counts 3-7). The trial court ordered a portion of the sentences to be served consecutively for an effective one-hundred seventy-six-year sentence. In his sole issue on appeal, Defendant asserts that the trial court erred by ordering partial consecutive sentencing. After a thorough review of the record and the briefs, we affirm the judgments of the trial court. However, we remand for a corrected judgment in Count 20 of Case No. 2012-CR-213.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed;**
**Remanded for a Corrected Judgment in Count 20 of Case No. 2012-CR-213**

THOMAS T. WOODALL, P. J., delivered the opinion of the Court, in which ALAN E. GLENN and TIMOTHY L. EASTER, JJ., joined.

Comer L. Donnel, District Public Defender; William Cather and Michael W. Taylor, Assistant District Public Defenders, Lebanon, Tennessee, for the appellant, Larry Douglas Clemons.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Tom P. Thompson, Jr., District Attorney General; Tom Swink and Howard Chambers, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## Background

Defendant's case initially went to trial, and during the testimony of the State's first witness, Special Agent Joshua Savley of the Tennessee Bureau of Investigation, Defendant decided to plead guilty to all charges. Special Agent Savley's testimony prior to the guilty plea was in reference to Counts 1 through 5 in Case No. 12-CR-213. Special Agent Savley testified that he was assigned to investigate the allegations in the present case. He interviewed Defendant on August 2, 2012, and a search warrant was executed at Defendant's residence. Defendant waived his rights and gave a written statement. Special Agent Savley spoke with Defendant a second time the following day. Defendant again waived his rights and gave a statement.

In his statements, Defendant admitted to speaking with the fifteen-year-old victim, who was his step-granddaughter, about sex. He arranged for and transported her to have several sexual encounters with men in various locations, including Carthage, Tennessee, Lebanon, Tennessee, Murfreesboro, Tennessee, and Tunica, Mississippi between January of 2010 and August of 2012. Defendant admitted that he received pictures of the victim having sex with some of the men, and he also received pictures of the victim's breasts and vagina from some of the men. Defendant saved the pictures and shared them with others through emails and texts for the purpose of arranging future sexual encounters with the victim. Defendant told Special Agent Savley that he had contacted Winnie Hunt about arranging for the victim to have sex with some Mexican men. He sent pictures of the victim having sex to Ms. Hunt, and he also sent pictures of the victim's genitalia to her. Defendant and Ms. Hunt then discussed an arranged payment of $300 for the sexual encounter. Defendant explained that Ms. Hunt would receive $100, and he and the victim would split the remaining $200. Defendant also admitted to attempting to arrange additional sexual encounters between the victim and other men.

Special Agent Savley testified that Winnie Hunt later worked as a confidential informant. She placed phone calls to Defendant that were recorded, and she wore a "wire" during a meeting with Defendant in which they discussed arranging for the victim to have sex with men. Defendant's statements during the meeting were recorded. Special Agent Savley testified that during the search of Defendant's home, a notebook was found containing notes that Defendant wrote concerning the victim's sexual encounters with adult men. Special Agent Savley also obtained hotels records showing the dates and charges corresponding to hotel rooms obtained by Defendant. Files and messages were retrieved from Defendant's computer as well as his cell phone and email account. Special Agent

Savley read sexually explicit emails into the record from Defendant to various men concerning sexual encounters with the victim.

The following is a brief summary of the facts supporting each count of the indictments which were read into the record by the prosecutor at the guilty plea submission hearing. In Case No. 2012-CR-213, Counts 1-4 (trafficking a minor for sexual servitude), Defendant offered the fifteen-year-old victim for various sex acts to men he contacted on the internet. He made hotel arrangements for these encounters and transported the victim to the hotel rooms. Defendant also gave the men explicit and graphic instructions for engaging in sex acts with the victim, and he encouraged the men to supply the victim with alcoholic beverages. For Count 5 (attempted trafficking a minor for sexual servitude), Defendant attempted to arrange for a sexual encounter between the victim and another man as described in the first four counts. Counts 7-14 (aggravated sexual exploitation of a minor), involved the distribution by Defendant of eight separate sexually explicit photographs of the victim to various people on the internet. In support of Counts 15-19 of the indictment in Case No. 2012-CR-213 (aggravated sexual exploitation of a minor), Defendant distributed five images of child pornography involving the victim to Winnie Hunt. A conversation between Ms. Hunt and Defendant was recorded to corroborate the five counts. In Counts 20-25 (sexual exploitation of a minor), Defendant possessed six photographs of the victim engaged in sex acts or of her exposed body.

In Case No. 2012-CR-236 Defendant was charged with one count of aggravated sexual exploitation of a minor. This involved the distribution by Defendant of a picture of the victim's vagina to Winnie Hunt.

Finally, in Case No. 2012-CR-302, Counts 1-2 (trafficking a minor for sexual servitude), Defendant on one occasion transported the victim and Wesley Jones, an adult male, to Tunica, Mississippi for the purpose of sex. On a separate occasion, Defendant transported the victim and Ryan Lewis, another adult male, to a shop in Lewis County for the purpose of sex. In Counts 3-7 (Statutory Rape), Defendant was criminally responsible for five separate penetrations of the victim by Jonathan Mungle, and the sexual encounters were arranged by Defendant.

Defendant listened to all of the facts read into the record by the prosecutor and agreed that they were accurate and that all of the events took place.

At the sentencing hearing James Leach, an employee of the Tennessee Department of Correction, Probation and Parole, testified that Defendant did not wish to make a statement concerning his version of the facts for the presentence report. A victim impact

statement was included in the report. Mr. Leach noted that Defendant had no prior convictions; however, he had pending charges in Wilson County related to the present case.

Mr. Leach testified that a psychosexual report was prepared on Defendant, and it reflected that Defendant was in a medium to high risk to reoffend. On cross-examination, Mr. Leach agreed that it was recommended that Defendant continue sex offender treatment that should reduce the likelihood of Defendant reoffending.

The victim impact statement contains the following:

I cannot say I had physical injuries, but I do know that sex with some of these men was very painful. Luckily I was not infected with any kind of STD.

\* \* \*

I feel like this has done a lot of emotional harm. I went to counseling for a year. Having him out of my life is a big help. I wonder if I will ever be able to have a normal relationship and trust again.

At the sentencing hearing Defendant gave the following allocution:

Throughout my life, my family and friends have been my world. I now know that my actions were stupid and selfish and hurtful to [the victim], my wife, and my family and friends. The last thing I wanted to do was hurt either one of them. I still love them as much today as I always have. That's why I ended the trial, to save them from anymore [sic] embarrassment if I could.

I do want to make it clear that I never touched [the victim] in a sexual way, but I now understand the way the law of criminal responsibility works. I should never have taken [the victim] to have sex with anyone. I am deeply sorry for the hurt I have caused [the victim] and Nancy and all of my family and friends. I hope you all can eventually find a way to forgive me and think of the good that I did rather than the bad.

The trial court considered the principles of sentencing and noted the sentencing range for each count of the three indictments. The trial court then made the following findings in part concerning Defendant's sentences:

This Court heard, prior to the termination of the proceedings in November, in the form of emails initiated and responded and also returning emails that this

-4-

defendant responded to, some of the most repugnant language that one could imagine going back and forth relating to a family member of his, a young girl that at best was 15 years of age and maybe up to about 17 - - or 14 to 15 to 16 or 17, a young girl that I've read the impact statement that deprived her of that which any young teenage girl should hold dear to herself. [Defendant], you pimped your own step-granddaughter.

[Defendant], as I look at all the enhancement factors here, the only one that doesn't apply because it is engrained in the nature of these offenses, the age of the victim, every enhancement factor applies in this case. You did impose extreme cruelty, mental and physically, on a young teenage girl.

You did cause by your conduct personal injury to her, emotional and physical to her. You were the leader in the commission of all of these crimes because you initiated it all by pimping that granddaughter. You wanted the pleasure that you could derive by your conduct as you allowed multiple men to violate her. You violated indeed a position of trust as a grandfather to her by putting her out basically for sexual servitude to derive your own sense of sexual pleasure from this and promote sexual pleasure for others. Every enhancement factor except for the age of the victim applies in this case.

I've looked at the mitigating factors that the statutes of this state provide. None apply. There is but one that might be considered, that is, sir, mercifully, you stopped this proceeding. You stopped it before the State's prosecuting witness, the TBI agent, completed his testimony. That's the only mitigating factor that this Court can consider. You told me that you didn't want your wife nor your step-granddaughter to go through this, but yet we started a trial.

So what should your sentence be, since I find that every enhancement factor that the State has cited applies excepting [sic] one? With regard to Count 1, trafficking for sexual servitude, in case number 12-CR-213, given the number of enhancing factors that apply in this case and even counterbalancing the fact that you stopped this trial with your guilty plea, these are advisory only, but they all seem to apply, I sentence you to 12 years as a Range I offender.

With regard to Count 2, the same crime, trafficking for sexual servitude, I sentence you to 12 years as a Range I offender. With regard to Count 3, trafficking for sexual servitude, I sentence you to 12 years as a Range I offender.

With regard to trafficking for sexual servitude in Count 4, I sentence you similarly to 12 years as a Range I offender. With regard to Count 5, attempt to comm[it] trafficking for sexual servitude, I sentence you to six years as a Range I offender. With regard to Count 6, especially aggravated sexual exploitation of a minor, I sentence you to 12 years as a 100 percent offender.

With regard to Counts 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, of the same indictment wherein you were charged and pled to aggravated sexual exploitation of a minor, I sentence you to six years as a Range I offender on each count.

With regard to Counts 20 through 25 wherein the charge was that you pled guilty to was that [sic] which was indicted, sexual exploitation of a minor, I sentence you to four years as a Range I standard offender on each count. With regard to case number 12-CR-236 wherein you entered a guilty plea to aggravated sexual exploitation of a minor, a Class C felony, I sentence you to six years as a Range I offender.

With regard to Counts 1 and 2 of case number 12-CR-302, trafficking for sexual servitude, I sentence you to 12 years on each count as a Range I standard offender. With regard to the remaining counts wherein you pled guilty to five separate counts of statutory rape, I sentence you to two years as a Range I offender on each of those counts.

The question before this Court is how should these sentences be served, consecutively or concurrently or a combination thereof? I have to look at the statute. The State has cited it in their brief to me, but as I independently look at it, the defendant stands convicted of two or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and the victim, the time span of the defendant's undetected sexual activity, the nature and scope of the sexual acts, and the extent of the residual, physical, and mental damage to the victim in this case.

I find specifically that even though trafficking for sexual servitude is contained in the section of our code that relates to kidnapping, the nature of the facts of this case, the fact that this was done with a minor, that this particular consideration contained in 40-35-115 subparagraph 5 that I just recited applies to this case, accordingly, this Court sentences you as I have outlined that the sentences for each and every sexual trafficking for the attempt to commit

sexual trafficking for the - - and I have a total of four counts of trafficking, Counts 1 through 4, each of those 12 years shall run consecutively to each other.

Attempt to commit to trafficking for sexual servitude, the six year sentence that I imposed earlier shall run consecutive to the previous four. With regard to trafficking for sexual servitude as contained in Counts 1 and 2 of case number 12-CR-302, the 12 year sentences that I imposed therein, each of those shall run consecutive to each other and those contained in case number 12-CR-213, including the consecutive sentence of six years as embraced in Count 5, the attempt to commit trafficking for sexual servitude. That's a total of 90 years on those particular crimes.

I find that with regard to Counts 7 through 19 of case number 12-CR-213 wherein I have imposed a sentence on each count of six years, I find that they are indeed separate and distinct offenses, and as I look to that which I recited a few moments ago, given the relationship between the victim and the defendant, a step-grandfather, given the time span of essentially over two years that this young girl was subjected to this undetected sexual activity, this pimping of his own step-granddaughter, and given the residual physical as well as mental damage to her, I find that each of those offenses, six years on each, shall run consecutive to one another and consecutive to that which I have already imposed. That's an additional 78 years.

I find, however, with regard to sexual exploitation of a minor contained in Counts 20 through 25 wherein I impose a sentence of four years on each of those counts that although he possessed these, I find that those four[-]year sentences shall run concurrent with each other and concurrent with the 168 years.

I find that, indeed, one does have to possess in order to distribute and that those sufficiently overlap, that those specific six counts would be multiplicious for sentencing purposes.

With regard to the sole count embraced in 12-CR-236 wherein I imposed a six[-] year sentence as a Range I standard offender, I find that that sentence, given my guidance contained in the statute that I read verbatim, given the history or the relationship between the parties, the victim and this defendant, given the residual effects to the victim, and considering it all, that that six year sentence

shall run consecutive to all those others that I have outlined adding an additional six years to [reach] 174 years.

I find in case number 12-CR-302 that with regard to the statutory rape in Counts 3, 4, and 5, that there was one perpetrator that this defendant is criminally responsible for. There were three separate penetrations, however, although I reluctantly do so, I find that each of those two year sentences shall run concurrent with each other and concurrent with that which I've already imposed. Two years to run concurrent.

With regard to the remaining two counts where we have a separate indictment, a separate incident of statutory rape, two penetrations by the same perpetrator that this defendant was criminally responsible for, wherein I imposed a sentence of two years on each, although I am reluctant to do so, I find that there's sufficient overlap there, that those two sentences should run concurrent with each other, but that they should run consecutive with the others. Therein, there's a total of 176 years, given the concurrency [sic] of some counts and the consecutive nature of others.

**Analysis**

Defendant contends that the trial court erred in ordering a portion of his sentences to be served consecutively for an effective sentence of one-hundred seventy-six years for his convictions for six counts of trafficking for sexual servitude, one count of attempt to commit trafficking for sexual servitude, one count of especially aggravated sexual exploitation of a minor, fourteen counts of aggravated sexual exploitation of a minor, six counts of sexual exploitation of a minor, and five counts of statutory rape (criminal responsibility). Defendant argues that his sentence is excessive and "not the least severe measure available to achieve the purpose for which the sentence is imposed" and that the trial court erred by finding that an "excessive aggregate sentence was necessary to avoid depreciating the seriousness of the offenses." He further argues that he had never been convicted of any prior criminal offense and that the trial court erred by "failing to consider whether measures less restrictive than confinement had been frequently or recently applied to the offender." We disagree.

Whenever a defendant challenges the manner of service of sentences, including consecutive sentencing, the appellate court reviews the trial court's decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Pollard,* 432 S.W.3d 851, 859 (Tenn. 2013). "So long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal."

-8-

*Id.* at 862. However, the application of an abuse of discretion with a presumption of reasonableness standard of review when considering consecutive sentencing based upon the "dangerous offender" category in T.C.A. § 40-35-115(b)(4) does not eliminate the requirements of *State v. Wilkerson*, 905 S.W.2d 933 (Tenn. 1995) that the "proof must also establish that the terms [of sentencing] imposed are reasonably related to the severity of the offenses committed and are necessary in order to protect the public from further criminal acts by the offender." *Pollard*, 432 S.W.3d at 863 (quoting *Wilkerson*, 905 S.W.2d at 938).

In sentencing a defendant, the trial court must consider: (1) the evidence, if any received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in T.C.A. §§ 40-35-113 and 40-35-114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant wishes to make on his own behalf about sentencing. *State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008) (quoting T.C.A. § 40-35-210(b) (2006)). It is also "critical" that a trial court place on the record the enhancement or mitigating factors that the court considered, if any, as well as the court's reasoning for the sentence, in order to ensure fair and consistent sentencing. *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012).

Initially, we point out that the judgment form in Count 20 of Case No. 2012-CR-213 reflects that Defendant was convicted of aggravated sexual exploitation of a minor. However, the plea agreement and the sentencing hearing transcript reflects that Defendant was convicted of sexual exploitation of a minor. Therefore, we remand for entry of a corrected judgment form in Count 20 to reflect the correct offense of sexual exploitation of a minor.

First, Defendant argues that his effective one-hundred seventy-six-year sentence violates the federal and Tennessee constitutional provisions against cruel and unusual punishment. He does not argue that the sentence is outside the appropriate range. Both the Eighth Amendment to the United States Constitution and article I, section 16 of the Tennessee Constitution prohibit the infliction of cruel and unusual punishment . U.S. Const. amend. VIII ( "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."); Tenn. Const. art. I, § 16 ("That excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."). Despite the nearly identical wording of the two provisions, our Supreme Court has consistently afforded a more expansive interpretation to article I, section 16 than that afforded to the Eighth Amendment. *See State v. Harris,* 844 S.W.2d 601, 602 (Tenn. 1992).

Accordingly, although the United States Supreme Court has held that the Eighth Amendment contains no proportionality guarantee outside of sentencing for a capital offense, *see Rummel v. Estelle,* 445 U.S. 263, 274, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980) (recognizing that "for crimes concededly classified and classifiable as felonies, that is, as punishable by significant terms of imprisonment in a state penitentiary, the length of the sentence actually imposed is purely a matter of legislative prerogative"); *Harmelin v. Michigan,* 501 U.S. 957, 994, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (refusing to extend proportionality review to non-capital offenses), our Supreme Court has concluded that the state constitution provides for the proportionality review of non-capital sentences. *Harris,* 844 S.W.2d at 602. Reviewing courts, however, should grant substantial deference to the broad authority legislatures possess in determining punishments for particular crimes, "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences [will be] exceedingly rare." *See Solem v. Helm,* 463 U.S. 277, 289-90, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) (emphasis in original) ( quoting *Estelle,* 445 U.S. at 272).

In order to determine if a sentence in a non-capital case is disproportionate and therefore in violation of Article 1, section 16's guarantee from cruel and unusual punishment, the Tennessee Supreme Court in *Harris* adopted the following analysis:

> [T]he sentence imposed is initially compared with the crime committed. Unless this threshold comparison leads to an inference of gross disproportionality, the inquiry ends - the sentence is constitutional. In those rare cases where this inference does arise, the analysis proceeds by comparing (1) the sentences imposed on other criminals in the same jurisdiction, and (2) the sentences imposed for commission of the same crime in other jurisdictions.

*Harris*, 844 S.W.2d at 603.

After examining the one-hundred seventy-six -year sentence imposed by the trial court in light of the seriousness of Defendant's offenses, we hold that there is no inference of gross disproportionality. The fifteen-year-old victim in this case was sent to live with Defendant, who was her step-grandfather, and her grandmother because of abuse by her step-mother after her mother died. Defendant then "pimped" the victim out to numerous men over a two-year period in order to satisfy his sexual fantasies. During one of the sexual encounters, Defendant arranged for the minor victim to have sex with three men simultaneously, and he attempted to arrange for other sexual encounters between the victim and multiple men. Defendant obtained pictures of the victim having sex with some of those men, and he also obtained pictures of her breasts and vagina that he distributed to others through emails and texts. A couple of sexual encounters which Defendant arranged and transported the victim

-10-

to did not take place because the victim became upset. Defendant's deviant behavior did not cease until a confidential informant working with police recorded Defendant attempting to set up another sexual encounter between the victim and multiple men.

In the victim impact statement, the victim indicated that many of the sexual encounters arranged by Defendant were painful. The victim also attended counseling for a year and believed herself incapable of maintaining a health relationship as a result of Defendant's actions. The victim felt that Defendant preyed upon her vulnerability, and she described how Defendant's actions robbed her of something "sacred and special" and left her feeling "scared, dirty, and alone."

There being no inference of gross disproportionality, we do not need to proceed to intra- and inter-jurisdictional analyses. Defendant's effective one-hundred seventy-six-year sentence is not grossly disproportionate to his crimes of six counts of trafficking for sexual servitude, one count of attempt to commit trafficking for sexual servitude, one count of especially aggravated sexual exploitation of a minor, fourteen counts of aggravated sexual exploitation of a minor, six counts of sexual exploitation of a minor, and five counts of statutory rape (criminal responsibility). The sentence does not constitute cruel and unusual punishment under the Eighth amendment of the United States Constitution or article I, section 16, of the Tennessee Constitution. In *State v. Sammie Lee Taylor*, No. 02C01-9501-CR-00029, 1996 WL 580997 (Tenn. Crim. App. Oct. 10, 1996), a panel of this court held:

> Furthermore, a punishment imposed within the statutory limits for that offense and according to this state's sentencing principles does not violate constitutional proscriptions against cruel and unusual punishment. *State v. Flynn,* 675 S.W.2d 494, 499 (Tenn. Crim. App. 1984); *State v. French,* 489 S.W.2d 57, 60 (Tenn. Crim. App. 1972). Therefore, any sentence within the statutory guidelines cannot be considered excessive. Additionally, the fact that the sentence imposed by the trial court exceeds the life expectancy of the appellant does not, *per se,* make the sentence oppressive or constitute an abuse of discretion. *See State v. Tyler,* 840 P.2d 413, 435 (Kan. 1992) (finding sentence of 111 to 330 years is not cruel and unusual punishment). *Accord. People v. Walker,* 663 N.E.2d 148 (Ill.App.Ct.1996) (sentence of 100 to 300 years for rape, armed robbery, and attempted murder imposed upon sixty-four year old defendant not excessive); *Hurt v. State,* 657 N.E.2d 112 (Ind. 1995) (ninety year sentence for murder and rape not unreasonable); *Fields v. State,* 501 P.2d 1390 (Okla. Crim. App. 1972) (1,000 year sentence not excessive). *Cf. State v. Wallace,* 604 S.W.2d 890, 892 (Tenn.Crim.App.1980) (sentence of 150 years not cruel and unusual punishment); *Moore v. State,* 563 S.W.2d 215 (Tenn. Crim. App. 1977) (two consecutive life sentences upheld); *Hall v.*

*State,* No. 01C01-911-CC-00338 (Tenn. Crim. App. at Nashville, Aug. 13, 1992) (110-year effective sentence does not violate eighth amendment).

This issue is without merit.

Defendant has likewise failed to demonstrate that the trial court abused its discretion by imposing partial consecutive sentences. Tennessee Code Annotated section 40-35-115(b) provides that a trial court may order sentences to run consecutively if it finds any one of the following criteria by a preponderance of the evidence:

> (1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive;
>
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
>
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
>
> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;
>
> (6) The defendant is sentenced for an offense committed while on probation; or
>
> (7) The defendant is sentenced for criminal contempt.

T.C.A. § 40-35-115(b).

-12-

These criteria are stated in the alternative; therefore, only one need exist to support the appropriateness of consecutive sentencing. Here, the trial court applied factor (5), that Defendant was convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims. Because the trial court provided reasons on the record establishing one of the seven statutory grounds for consecutive sentencing, we afford the trial court's decision a presumption of reasonableness. Furthermore, the record shows that the trial court followed the principles and purposes of the Sentencing Act, and the record supports the trial court's findings. *See State v. Ricky Lamont Brigman*, No. M2002-00461-CCA-R2-CD, 2003 WL 21391762, at (Tenn. Crim. App. June 17, 2003)(upheld consecutive sentencing based upon thirteen convictions for various sexual offenses involving six minor victims over a seven-year period resulting in an effective ninety-one year sentence); *State v. William Douglas Zukowski*, No. M2001-02184-CCA-R3-CD, 2003 WL 213785, at *21 (Tenn. Crim. App. Jan. 31, 2003)(consecutive sentences proper for five convictions of rape of a child resulting in an effective one-hundred twenty-five year sentence involving a handicapped victim, and the abuse occurred for two years); and *State v. Frank Crittenden*, No. M1998-00485-CCA-R3-CD, 1999 WL 1209517, at *4 (Tenn. Crim. App. Dec. 17, 1999)(consecutive sentencing upheld resulting in an effective sentence of one-hundred years where the defendant was indicted on thirty-six counts of sexual abuse and pled guilty to eight counts of aggravated rape of his minor daughter occurring over a period of eight years). We conclude that the trial court did not abuse its discretion by ordering a portion of Defendant's sentences to run consecutively. Defendant is not entitled to relief on this issue.

We remand for a corrected judgment in Count 20 of Case No. 2012-CR-213. Otherwise we affirm the judgments of the trial court.

_____

THOMAS T. WOODALL, PRESIDING JUDGE