# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
January 12, 2016 Session

## STATE OF TENNESSEE v. STEPHEN GERARD SMITH

**Appeal from the Circuit Court for Franklin County**
**No. 20336    J. Curtis Smith, Judge**
_____

**No. M2015-00261-CCA-R3-CD – Filed November 4, 2016**
_____


Stephen Gerard Smith, the Defendant, filed a pro se Motion for Reduction of Sentence pursuant to Tennessee Rule of Criminal Procedure 35 in which he asked the trial court to either reduce his sentence or to grant a new sentencing hearing. Because the Defendant was erroneously sentenced as a career offender rather than a persistent offender for Class C felony aggravated assault and because the sentence was entered as the result of an agreement between the State and the Defendant, the trial court granted a new sentencing hearing. Following the sentencing hearing, the trial court sentenced the Defendant to thirteen years' incarceration as a Range III persistent offender for Class C felony aggravated assault and to a consecutive sentence of twelve years' incarceration as a career offender for Class D felony attempted aggravated assault. The Defendant was sentenced to eleven months and twenty-nine days for each of the three domestic assault convictions to be served concurrently with each other and with the felony sentences. The Defendant claims the trial court abused its discretion in allowing him to proceed pro se in the motion hearing and in the imposition of the sentences. Discerning no error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and TIMOTHY L. EASTER, JJ., joined.

Robert T. Carter, Tullahoma, Tennessee, for the appellant, Stephen Gerard Smith.

Herbert H. Slatery III, Attorney General and Reporter; Andrew C. Coulam, Assistant Attorney General; J. Michael Taylor, District Attorney General; and Courtney Lynch, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In July 2012, the Franklin County Grand Jury indicted the Defendant for three counts of aggravated assault and four counts of domestic assault. The victim in the first six counts was the Defendant's wife, and the victim in Count 7 was the Defendant's daughter. Count 7 was dismissed by the State. On June 26, 2013, the State filed a "Notice of Intention to Seek an Upper Range Punishment . . ." listing six prior felony convictions—two Class D and four Class E felonies. On July 15, 2013, a jury found the Defendant guilty of aggravated assault, attempted aggravated assault, and three counts of domestic assault. The jury found the Defendant not guilty of aggravated assault in Count 5.

We glean from the briefs and record that the Defendant and the State reached an agreement shortly after the jury trial on a proposed sentence for the five Franklin County convictions, as well as a plea agreement for two pending Grundy County charges. On July 18, 2013, the trial court signed an order finding that the Defendant, after being "fully informed by his attorney," "waives all issues related to the jury trial and verdict in this case and the possible appeals thereof." The order also provided that "issues related to bond revocation are moot" and that the Defendant "waived venue so that these judgments and order can be entered in Grundy County[.]" On July 19, 2013, judgments of conviction were entered in Franklin County sentencing the Defendant to fifteen years as a career offender for aggravated assault, twelve years as a career offender for attempted aggravated assault, and eleven months and twenty-nine days for each of the three domestic assaults. All sentences were ordered to be served concurrently. Based on the briefs and statements of counsel at the motion hearing, the Defendant pleaded guilty to the Grundy County charges and was sentenced to twelve years as a career offender for Class D felony vandalism and to fifteen years as a career offender for Class C felony aggravated assault. The Grundy County sentences were ordered to be served concurrently with each other and with the Franklin County sentences as part of a global sentencing agreement. The effective sentence for the seven convictions was fifteen years in the Department of Correction with a 60% release eligibility date.

On November 4, 2013, the Defendant filed a pro se Rule 35 motion in which he asked the trial court to either reduce his sentence or to grant a new sentencing hearing. The motion specifically asked the trial court to sentence the Defendant as a Range II offender and to release the Defendant on probation or parole for time served.

On February 11, 2014, the Defendant's Rule 35 motion was argued in the trial court. The Defendant was represented at the hearing by the attorney who represented him in the jury trial, the entry of the plea to the Grundy County cases, and the sentencing hearing (trial counsel). The State admitted that it erred in determining that the Defendant

had sufficient prior convictions to justify sentencing the Defendant as a career offender on the Class C felony aggravated assault, and trial counsel admitted that he incorrectly advised the Defendant that he was a career offender for the Franklin County Class C felony. After statements by counsel, the trial court stated, "In my opinion I cannot grant him a new sentencing hearing and leave the [Grundy County] pleas in place." The trial court stated, "[The Defendant] can go to trial on the [Grundy County charges], he can plead them out, but I'm not telling you I will do anything, Mr. Smith, but you run the risk of getting somewhere between [ten] and [fifteen] years on the one that you're convicted [of] and then going to trial and getting those stacked on top of those." The Defendant responded, "Yes, sir."

Thereafter, the trial court granted the Rule 35 motion, set aside the prior judgments for both the Franklin County and Grundy County convictions and granted a new sentencing hearing for the Franklin County convictions. In addition, the trial court set aside the order dismissing Count 7. In its order entered on February 18, 2014, the trial court stated that it was treating the Rule 35 motion as a "Motion to Withdraw" his guilty pleas in the two Grundy County cases and as a "Motion to Set Aside the Judgment[s] previously entered in [Franklin County] Case #20336[.]" Because the judgments sentencing the Defendant to the Department of Correction were set aside, the trial court ordered the Defendant to be held in the Franklin County Jail. The order further stated that the Defendant "shall have no contact" with his wife, his daughter, a witness who testified at trial, and the witness' husband. The judgments of conviction for aggravated assault and attempted aggravated assault also contained a no contact provision concerning the Defendant's wife. Trial counsel was relieved of further representation, and new counsel was appointed.

The State filed a petition for contempt alleging that the Defendant willfully violated the no contact by telephoning his parents from the jail and speaking with his daughter. The trial court set the hearing on the contempt petition on the same day as the sentencing hearing.

At the sentencing hearing, Josh Rogers, a probation officer, testified that he prepared the presentence report, which was entered as an exhibit. Mr. Rogers was also actively supervising the Defendant's probation on previous misdemeanor convictions at the time the Defendant was indicted for the seven assaults in this case. The Defendant's probation was revoked after he was indicted. The presentence report listed the following six prior felony convictions: Class E felony reckless endangerment involving a deadly weapon; Class E felony evading arrest; Class E felony theft; Class D felony burglary; Class D felony theft; and Class E felony schedule VI controlled substance. The report indicated that the Defendant was sentenced to concurrent sentences of three years for Class D felony theft of property and two years for a Class E felony marijuana offense on

July 10, 2001, and placed on probation. On December 5, 2001, he was sentenced to consecutive, two-year sentences for Class E felony theft and Class D felony burglary, and as a result, his probation was revoked. He was sentenced to community corrections after service of ninety days in jail. The Defendant's community corrections was revoked on March 11, 2003, and he was ordered to serve his sentence in the Department of Correction. He was sentenced to two years for the reckless endangerment and two years for felony evading on March 27, 2003. Those sentences were ordered to be served consecutively to his prior convictions. He was paroled October 11, 2004, and his parole was revoked on March 1, 2005. He was sentenced to three consecutive eleven-month and twenty-nine day sentences for two assaults and one count of vandalism and thirty days for criminal trespass on March 17, 2009. He was ordered to serve eleven months and twenty-nine days in the jail followed by probation. He was sentenced to eleven months and twenty-nine days for vandalism on April 29, 2009, and that sentence was ordered to be served consecutively to the prior misdemeanor sentences. His probation was fully revoked on July 12, 2010.

It is unclear from the presentence report as to which charges Mr. Rogers was referring when he stated the Defendant's probation was revoked when he was charged with the assaults in this case. Mr. Rogers also testified that the Defendant was convicted of DUI in Coffee County immediately after his jury trial in Franklin County. The presentence report also showed that the Defendant had charges pending against him in Franklin County for vandalism over $1,000, leaving the scene of an accident, aggravated burglary, and misdemeanor theft. The Defendant had also been convicted of a number of traffic offenses.

Following the testimony of Mr. Rogers, the State called John Smith, the Defendant's father, as a witness on the pending contempt petition. The State advised the court that it wanted to play several audio recordings of telephone calls made by the Defendant to his father from the Franklin County Jail. Additionally, the State argued the audio recordings were admissible on the issue of alternative sentencing because the Defendant had asked to be released into the community on probation or parole in the Rule 35 motion. The Defendant's counsel advised the trial court that the Defendant's father and Ginny Smith, the Defendant's mother, would be "invoking their 5th Amendment right not to incriminate themselves." After the Defendant's counsel stipulated that it was the Defendant's voice on the audio recordings, the State released Mr. and Mrs. Smith from the subpoenas. The Defendant's counsel then stated "that [the Defendant] would be willing to offer a stipulation as a matter of law that he did violate conditions of his release by contacting or attempting to contact prohibited people in the conditions." The State stated that it wanted to play the audio recordings "for the substance of those as to his candidacy for release" and announced that it would call

Scotty McKay, Jail Administrator for the Franklin County Sheriff's Department, as its next witness.

Mr. McKay explained that except for the initial call made when a prisoner is booked, all calls after a prisoner enters the general population are recorded. He testified that inmates are advised that telephone calls are recorded each time a call is made. The State asked to play the audio recordings. The Defendant made a "blanket objection" stating that the audio recording contained "some inflammatory thing" and argued that the Defendant had stipulated that he violated the court's order. Concerning the audio recordings, the trial court asked the State "where do they fit into the sentencing matrix[?]" The State responded that the Defendant's blatant disregard for the Court's order shows that he is not a candidate for release. The trial court overruled the objection and allowed the audio recordings to be played.

During one telephone call, the Defendant was "talking to [his daughter] about her mother's truthfulness[.]" During another telephone call, this time speaking with his father, the Defendant made numerous offensive and vulgar remarks about the trial court and stated that the trial court cannot "tell me when I can or cannot talk to my child." The trial court, after acknowledging that the Defendant's statements were disparaging of the court, asked the State how they are relevant to sentencing. The State argued that the statements showed that the Defendant did not intend to follow the court's orders. The trial court stated that, "I take no personal offense in what he says about me." The trial court indicated that it would consider the audio recordings on the Defendant's "amenability, not following directions on probation[.]"

At the conclusion of the sentencing hearing, the trial court took the matter under advisement.

On July 7, 2014, the trial court filed a "Sentencing Memorandum" in which the court stated:

> In determining the appropriate sentence for these offenses, this Court has considered the evidence presented at the trial and the sentencing hearing, the presentence report, the principles of sentencing and arguments made as to sentencing alternatives, the nature and characteristics of the criminal conduct involved, the evidence and information offered by the parties on the mitigating and enhancement factors, any statistical information provided by the administrative office[] of the court[s] as to sentencing practices for similar offenses in Tennessee and the Defendant's potential for rehabilitation.

The trial court made the following statement about the facts:

> Defendant engaged in a several hours rampage of assaults lasting several days against his wife…. During that time defendant forcibly grabbed his wife on several occasions, hit her with his fists and foot on several occasions, pressed a sharp object against her neck, threatened her with his bow and arrows and verbally abused his wife.

In determining the proper length of the Defendant's sentences, the trial court applied three enhancement factors listed in Tennessee Code Annotated section 40-35-114, finding that the Defendant:

> (1) "has a previous history of criminal activity or criminal behavior in addition to those necessary to establish the appropriate range[;]"
> (2) "before trial or sentencing, has failed to comply with the conditions of a sentence involving release into the community[;]"and
> (3) "[a]t the time the felony was committed … was released on probation…."

T.C.A. § 40-35-114(1), (8), (13). The court found no mitigating factors.

Focusing on the alignment of the multiple convictions, the trial court found, pursuant to Tennessee Code Annotated section 40-35-115(b)(2) and (6), that "the defendant is an offender whose record of criminal activity is extensive" and that "the defendant is sentenced for an offense committed while on probation[.]" The trial court ordered the thirteen-year aggravated assault sentence and the twelve-year attempted aggravated assault sentence to be served consecutively in the Department of Correction. The record does not shed any light on the outcome of the charges in Grundy County.

After the Defendant's Motion for New Trial was overruled, the Defendant timely filed his Notice of Appeal.

## Analysis

### Pro se representation

The Defendant claims the trial court abused its discretion by allowing the Defendant to proceed pro se "when it failed to adequately safeguard the [Defendant's] [S]ixth [A]mendment right to counsel" at the Rule 35 motion hearing and by failing to ensure "that [the Defendant's] decision to do so was a voluntary act made knowingly and intelligently[.]" The State argues the issue is waived because the Defendant raised this issue for the first time on appeal. The State also avers that the Defendant cannot meet the

plain-error test because there was no clear violation of the law. Finally, the State argues that the Defendant was represented by counsel in the Rule 35 motion. We agree with all three of the State's arguments.

First we note that the only "pro se representation" occurred when the Defendant initially filed the Rule 35 motion during the time he was incarcerated in prison. The Defendant claims the trial court "should not have heard and ruled on a pro se motion unless the accused knowingly and voluntarily waived his right to counsel and expressed a competent desire to represent himself." That argument defies logic. The Defendant had an absolute right to file the motion and to request whatever relief to which he believed he was entitled. A trial court cannot anticipatorily appoint counsel should a defendant decide to file a motion after the judgment of conviction becomes final. However, a trial court can insure that a defendant is provided an opportunity to be represented by counsel after the motion is filed, which is exactly what the trial court did in this case.

The Defendant did not raise this issue at the Rule 35 motion hearing, probably because the Defendant's trial counsel represented him throughout the hearing without the Defendant voicing a concern or raising an objection to that representation. "Ordinarily, issues raised for the first time on appeal are waived." State v. Alvarado, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996). Even if the issue were not waived, the Defendant cannot prevail under a plain error analysis. There was no clear violation of any law concerning pro se representation. See State v. Adkisson, 899 S.W.2d 626, 641 (Tenn. Crim. App. 1994). He was represented by his trial counsel throughout the Rule 35 motion hearing, and trial counsel successfully obtained a new sentencing hearing for the Defendant. The issue is without merit.

Length of sentences

The Defendant claims the trial court abused its discretion by imposing more than the minimum sentence for the two felony convictions and by ordering the two felony sentences be served consecutively. The State argues that the trial court did not abuse its discretion because it imposed sentences within the appropriate range after a proper application of the purposes and principles of our Sentencing Act and that the findings by the trial court supported consecutive sentences. We agree with the State.

When the record establishes that the trial court imposed a sentence within the appropriate range that reflects a "proper application of the purposes and principles of our Sentencing Act," this court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). A trial court abuses its discretion when it applies an incorrect legal standard, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the

complaining party." State v. Clark, 452 S.W.3d 268, 287 (Tenn. 2014) (citing State v. Banks, 271 S.W.3d 90, 116 (Tenn. 2008)). "[A] trial court's misapplication of an enhancement or mitigating factor does not remove the presumption of reasonableness from its sentencing determination." Bise 380 S.W.3d at 709. Moreover, this court may not disturb the sentence even if it had preferred a different result. See State v. Carter, 254 S.W.3d 335, 346 (Tenn. 2008). The same standard applies when a defendant challenges the denial of probation or other alternative sentence. State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012).

To facilitate meaningful appellate review, the trial court must state on the record the factors it considered and the reasons for imposing the sentence chosen. T.C.A. § 40-35-210(e) (2010); Bise, 380 S.W.3d at 706. However, "[m]ere inadequacy in the articulation of the reasons for imposing a particular sentence . . . should not negate the presumption [of reasonableness]." Id. at 705-06. The party appealing the sentence has the burden of demonstrating its impropriety. T.C.A. § 40-35-401 (2010), Sent'g Comm'n Cmts.; see also State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. See T.C.A. § 40-35-210(b) (2010); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court should also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103(5) (2010).

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and
>
> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210(c) (2010).

Although the trial court should consider enhancement and mitigating factors, the statutory enhancement factors are advisory only. See T.C.A. § 40-35-114 (2010 & Supp. 2013); see also Bise, 380 S.W.3d at 699 n. 33, 704; Carter, 254 S.W.3d at 343. "[A] trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." Carter, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" Id. at 343. "[Appellate courts are] bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." Id. at 346.

In this case, the trial court properly applied the principles and purposes of sentencing and explained its reasoning in its Sentencing Memorandum. As such, we review the trial court's sentencing decision for an abuse of discretion with a presumption of reasonableness.

The record supports the trial court's application of three enhancement factors. The presentence report and the testimony presented at the sentencing hearing establish that the Defendant had "a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range." T.C.A.§ 40-35-114(1). In addition to six prior felony convictions required by Tennessee Code Annotated section 40-35-108(3) to establish that the Defendant was a career offender for Class D felony attempted aggravated assault or the five or more felony convictions within the same class or the next two lower classes required by Tennessee Code Annotated section 40-35-107(1) to establish that the Defendant was a persistent offender for the Class C felony aggravated assault, the Defendant had five class A misdemeanor convictions, including two for assault. In the section of the presentence report concerning alcohol and drug usage, the Defendant was asked, "[D]o or have you used any non-prescribed or illegal drugs?" The Defendant's response was "everything but heroine [sic][.]" No information was provided as to when the Defendant first used drugs, how much and how often the Defendant used drugs, when he last used drugs, and why he quit using drugs.

The second enhancement factor found by the trial court was that the Defendant "before trial or sentencing, has failed to comply with the conditions of a sentence involving release into the community[.]" T.C.A. § 40-35-114(8). The Defendant's presentence report and the testimony of the probation officer show that the Defendant's alternative sentences have been revoked numerous times, including revocations of probation, community corrections, and parole.

The third enhancement factor found by the trial court was that "[a]t the time the felony was committed" the Defendant was "released on probation." T.C.A. § 40-35-114(13)(C). The Defendant's probation officer testified that the Defendant was on probation when he committed the five assaults for which he was convicted.

The court found no mitigating factors.

The sentence range for a Range III persistent offender convicted of Class C aggravated assault is ten to fifteen years at 45% service. T.C.A. § 40-35-112(c)(3). The trial court sentenced the Defendant to thirteen years at 45% service. The mandatory sentence for a career offender convicted of Class D attempted aggravated assault is twelve years at 60% service. T.C.A. §§ 40-35-108(c), -112(c)(4). The trial court sentenced the Defendant to twelve years at 60% service. The trial court did not abuse its discretion in sentencing the Defendant within the appropriate range.

Consecutive sentences

The Defendant claims that the trial court abused its discretion in ordering the two felony convictions to be served consecutively. The State argues that the trial court did not abuse its discretion in ordering the two felony sentences to be served consecutively. We agree with the State.

The Tennessee Supreme Court has expanded the standard of review in Bise to trial courts' decisions regarding consecutive sentencing. State v. Pollard, 432 S.W.3d 851, 859 (Tenn. 2013). "So long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." Id. at 862 (citing Tenn. R. Crim. P. 32(c)(1); Bise, 380 S.W.3d at 705). Tennessee Code Annotated section 40-35-115 sets forth seven different criteria for the trial court to consider in deciding whether or not to impose consecutive sentencing. Two of those criteria were properly articulated by the trial court in its Sentencing Memorandum: that "the defendant is an offender whose record of criminal activity is extensive," T.C.A. § 40-35-115(b)(2), and that "the defendant is sentenced for an offense committed while on probation[.]" T.C.A. § 40-35-115(b)(6). Those two criteria are supported by the presentence report and the testimony at the sentencing hearing. The trial court did not abuse its discretion in ordering consecutive sentences.

Cruel and unusual punishment

Finally, the Defendant claims that consecutive sentencing of the Defendant violated the Defendant's right against cruel and unusual punishment. In State v. Harris, our supreme court stated:

- 10 -

Although the language of Article I, Section 16, of the Tennessee Constitution is virtually identical to that of the Eighth Amendment, this does not foreclose a more expansive interpretation of the Tennessee constitutional provision. See State v. Black, 815 S.W.2d 166, 188 (Tenn. 1991). We therefore examine the scope of the Tennessee provision before turning to Defendant's State constitutional challenge.

We hold that the proper means by which to evaluate a defendant's proportionality challenge under the Tennessee Constitution is that set forth by Justice Kennedy in Harmelin, [501 U.S. 957, 996 (1991)] (Kennedy, J., concurring in part). Under this methodology, the sentence imposed is initially compared with the crime committed. Unless this threshold comparison leads to an inference of gross disproportionality, the inquiry ends—the sentence is constitutional. In those rare cases where this inference does arise, the analysis proceeds by comparing (1) the sentences imposed on other criminals in the same jurisdiction, and (2) the sentences imposed for commission of the same crime in other jurisdictions.

State v. Harris, 844 S.W.2d 601, 602-03 (Tenn. 1992).

We determine that the imposition of consecutive sentences for the two felony convictions is not grossly disproportional and does not constitute cruel and unusual punishment under Article I, Section 16, of the Tennessee Constitution, or the Eighth Amendment of the United States Constitution. The Defendant's extensive history of prior felony convictions making him a persistent offender for the Class C felony aggravated assault and a career offender for the Class D felony attempted aggravated assault is the reason his sentences are the length they are and the reason his release eligibility dates are what they are. The Defendant's extensive record of criminal activity and the fact that he committed these offenses while on probation are the reasons the trial court ordered his sentences to be served consecutively.

## Conclusion

The Defendant was represented by counsel at the Rule 35 motion hearing. The Defendant's claim that he was forced to proceed pro se is baseless. The trial court did not abuse its discretion in sentencing the Defendant, either in setting the term of years of

service for each conviction or in ordering the sentences to be served consecutively, and the effective sentence does not constitute cruel and unusual punishment.  The judgments of the trial court are affirmed.

_____
THOMAS T. WOODALL, PRESIDING JUDGE